KENDALL
*vs*
HUGHES.

*Cates & Lindsey* and *Loughborough* for plaintiff; *Harlan & Craddock, McHenry* and *Duncan* for defendant.

DETINUE.

## Kendall *vs* Hughes.

*Case* 100.

APPEAL FROM THE HANCOCK CIRCUIT.

*Fraud, statute of.*

*Nov.* 2, 1846.

This opinion, with the two cases preceding, was delivered at the fall term, 1846, by the present Chief Justice, at the close of the term, and suspended until this term.

Case stated.

THIS action of detinue was brought by Hughes against Kendall, to recover two slaves, a woman and her infant child, which Kendall had purchased under executions against John L. Prewitt the former owner, the father-in-law of Hughes; and the sole question involved in the trial was, whether the bill of sale under which the plaintiff claimed these and other slaves, was fraudulent and void against creditors. Seven instructions were given as moved for by the plaintiff, and five as asked by the defendant, except that two of these last were modified by the Court, as will be presently stated. And the jury having found a verdict for the plaintiff, which the Court refused to set aside, the defendant brings the case to this Court.

Of the evidence we need not present a detail. It was of such a character as to authorize and require a strict scrutiny of the instructions in order to sustain the verdict.

Instructions of the Circuit Ct., given at the instance of each party.

Several of the instructions assume hypothetically that J. L. Prewitt made the sale with the intent of defrauding his creditors thereby, and that this intent was known to Hughes at the time. The Court properly instructed the jury as moved for by the plaintiff, that the fraudulent intent of Prewitt could not affect him, unless he participated in it at the time of the sale. And the instructions asked for by the defendant, to the effect that if Hughes made the purchase, knowing the fraudulent intent of

Prewitt, it was void, and they must find for the defendant, was properly refused in the terms in which it was asked.

For such knowledge in the purchaser was not in itself conclusive evidence of his participation in the fraud, so as necessarily to make the sale void without regard to other circumstances: *Brown vs Foree, &c. and same vs Smith, (decided at the present term.)* It may be that by the refusal to give these instructions as asked, and by so modifying them as to require as an additional condition essential to the conclusion that the sale was void, that Hughes should have made the purchase, to favor or further the fraudulent object of Prewitt, the jury may have been misled into the supposition that his knowledge of the fraudulent intent, was not alone sufficient evidence of his participation in it. But certainly the purchaser's knowledge of the vendor's fraudulent intent in making the sale, affords a presumption of his participation in that intent, which will authorize the conclusion that he did so participate, unless the inference be repelled by circumstances tending to show that he had sufficient lawful inducement to make the purchase, or that he took precautions against the intended consequences of the sales, or unless in some other way, the inference is repelled by the facts of the case. It is true that the purchaser must make the purchase to favor or further the fraudulent intent. But his knowledge of the intent tends to prove that he did make the purchase to favor or further it, and is sufficient unless this inference be repelled by the other facts. The jury, under the circumstances above stated, may have supposed that it was insufficient to authorize a verdict against the sale, unless some other fact were established tending more directly to prove a design on the part of Hughes to favor or further the fraudulent object of Prewitt. If, therefore, the Court, after declining to instruct the jury as asked by the defendant, thought proper to instruct them in his own language as to the effect of the purchaser's knowledge of the vendor's fraudulent intent, it would have been more safe to instruct them that upon these facts they might find the sale void, and should do so unless from other circumstances or under all the

KENDALL
vs
HUGHES.

The knowledge of a purchaser that the vendor of property intends to defraud his creditors, does not *in all cases,* of itself, render the sale fraudulent as to creditors and purchasers; but it creates a presumption of a fraudulent participation, which will authorize the conclusion, unless repelled by other facts and circumstances showing a lawful inducement to the purchaser.

facts, they believed that Hughes did not participate in the fraudulent intent of Prewitt, or did not make the purchase with a view to favor or further that intent. It is not necessary in this case to decide whether the modification actually made, would alone be sufficient ground of reversal.

The instruction No. 3, given for the plaintiff, that the fraudulent intention cannot be presumed, but must be proved like any other fact, is obviously misleading. Fraud or any other fact may be presumed, if there be sufficient evidence of other facts which authorize the inference of fraud.

*To instruct the jury "that fraud cannot be presumed, but must be proved like any other fact," decided to be misleading.*

*Fraud may be presumed if there be sufficient evidence of other facts which will authorize the inference of fraud.*

The 6th instruction, to the effect that when two persons live on the same place, the possession in law of slaves, is in the person having the legal right to them, if true in the terms in which it was given, could have little bearing on the case, unless to authorize the inference by the jury, that as the bill of sale transferred the legal right it also transferred the possession; whence they might also infer that no further change of possession was necessary to make the sale effectual, (so far as possession was concerned,) against all persons. This instruction was calculated to mislead. The principle of law by which the legal title to personalty, *prima facie* and constructively, draws to itself the possession, and under which the sale of personalty in the same house with vendor and vendee, may be complete and pass the possession in law without any actual manu tradition, if applicable at all to a case involving the question of fraud, has no legitimate operation in a case where the parties in fact live separately, and the vendee leaves the property in the ostensible possession of the vendor. It amounts to nothing more in such a case that as between vendor and vendee, the title passed without actual delivery of possession. But in the question of fraud, the *actual* possession cannot be disregarded. The instruction as given, tends rather to confuse a jury and to obscure the real question in issue.

*As between vendor and vendee, the title passes by sale without actual delivery of possession; but in cases involving the question of fraud, it cannot be disregarded.*

And of similar tendency is the first instruction which tells them that if they find the slaves to be the property of the plaintiff, they must find for him. The slaves were

*In questions involving the question of fraud in*

his property as against all the world except creditors, and against them unless the sale was fraudulent. The sixth instruction tells the jury "that if Hughes, in good faith, purchased the slave, Harriet, (the mother of the infant born after the sale,) from J. L. Prewitt, who delivered the possession of her to the plaintiff, and he placed her in the possession of Wm. F. Prewitt for hire, in law the possession was in the plaintiff, and the fact that J. L. Prewitt lived on the same place with Wm. F. Prewitt, did not make the latter an improper person to take possession of the slaves, if the transaction was otherwise fair and *bona fide.*" The fact as proved was, that Wm. F. Prewitt was a minor, living in the same house with his father, J. L. Prewitt; that some months before the sale of the slaves, J. L. Prewitt had assigned to him, (without the knowledge of the neighborhood,) the bond which he held for the title of the land on which he lived, taking his note for the price; that Wm. F. also promised to support his father and family, and continued as before, to manage the farm and control the laborers, and that there was no ostensible change either after the assignment of the bond or after the sale of the slaves to Hughes.

We think then, that this sixth instruction is liable to the objection that it rather colors or assumes too strong, the facts with regard to the residence of the Prewitts, and also to the objection that it introduces, with probable misleading effect, the principle of constructive possession before referred to. True, the whole is qualified by the condition that the jury should find that Hughes purchased, in good faith, and that the transaction, irrespective of the possession, was fair and *bona fide.* We do not know precisely what idea was conveyed to the jury by the words expressing this condition. The instruction, however, seems to imply that the jury might determine the question of fraud without looking to the state of the possession, and that unless without regard to that fact, they should find the sale fraudulent, the circumstance that the possession was left with Wm. F. Prewitt, was immaterial, or that this was in fact, a sufficient change of the possession to answer the requisition of the law. But certainly there was no such conclusive evidence of good faith

KENDALL
vs
HUGHES.

a purchaser in the sale of property, to instruct the jury, "that if they find the slaves to be the property of the plaintiff——they should find for him," is misleading, they may be the property of plaintiff against all the world except creditors and purchasers as to whom the plaintiff may not be entitled to recover.

Instructions to the jury should not assume facts which it is the province of the jury to decide, but be hypotheticated upon their belief from the evidence of the fact supposed; and should not conclude that plaintiff is authorized to recover upon their belief from the evidence, of part only of the facts necessary to authorize the recovery.

or of the absence of fraud as authorized the exclusion of the fact of possession from the consideration of that question. Where the question of fraud is an open and doubtful question of fact, the state of the possession is in all cases, entitled to influence and must be considered in determining the question. In many cases it is itself conclusive of fraud, and is so in the present case, if the formal change of possession was colorable only. And if it were not, the state of the possession was still a circumstance tending to give character to the transaction, and which, therefore, could not properly be excluded in inquiring into its character. The instruction was misleading and erroneous in authorizing its exclusion. The leaving of the possession with Wm. F. Prewitt, under the circumstances, authorized unfavorable inferences as to the motives of the purchase, and he was, therefore, in view of this inquiry, an improper person to receive it, and especially when the requisite publicity and certainty with regard to the fact and objects of his possession were not secured, but the possession was left in such a condition as might deceive and impose upon others.

A vendee left slaves in the possession of a son of vendor, a minor, on the same farm. Held that the acts of the vendor in regard to the property, might be considered by the jury in determining the character of the transaction.

The 5th and 7th instructions for the plaintiff speak of declarations of ownership by J. L. Prewitt after the sale, and of occasional directions by him to the slaves after they were delivered to Wm. F. Prewitt. The 5th informs the jury that such declarations were not evidence of fraud, &c., and the 7th informs them that if the jury believe from the evidence that Hughes purchased the slaves in good faith, and delivered them to Wm. F. Prewitt to keep for him, occasional directions to them by J. L. Prewitt while living in the same family with Wm. F., were not inconsistent with his possession and right, so as to constitute the transaction fraudulent, if otherwise it was fair and *bona fide.* Here again the facts as indicated in the instruction, do not properly characterize the real facts to which they probably intended to relate. J. L. Prewitt seems to have mortgaged some of the slaves after the sale, appropriated the hire of others, and received the proceeds of the labor on the farm. He concealed the slaves when the officer came to levy the execution, and

Wm. F. Prewitt, though present, and applied to for aid by the officer, intimated no agency on his part, or claim on the part of Hughes. At least the evidence conduces to prove these facts. But besides this, it is to be remarked, that as the plaintiff's case rests upon the assumption that he left the slaves with Wm. F. Prewitt as his agent or trusted bailee, his own ignorance of the declarations and acts of J. L. Prewitt in his absence, does not necessarily prevent them from being evidence against him, if they were known to his agent and acquiesced in by him. And further, by leaving the possession with a minor in J. L. Prewitt's family, after he had made an absolute purchase, and without giving notoriety to his own title and to the possession of Wm. F. Prewitt, he put it in the power of J. L. Prewitt to continue his acts of ownership and control, by which others were deceived, and his title must be subject to the inferences arising from the subsequent declarations and acts of J. L. Prewitt in connection with the property. They in fact characterize the state of the possession after the sale, constitute a part of it, and in enquiring into the real intent of the parties, these facts must be considered with others which tend to elucidate the transaction. We are of opinion therefore, that the 5th and 7th instructions, in their application to the actual case, were misleading and erroneous.

It should be stated, that it does not appear that Hughes when he made the purchase, occupied or acquired to any extent the attitude of a creditor of J. L. Prewitt. And as in view of the nature of the question of fraud as being one peculiarly within the province of the jury, we think conclusive efficacy should not be given by the Court to the single fact that the vendee knew of the vendor's fraudulent intent if it existed; so on the other hand, we are of opinion that no circumstance which tends to elucidate the intent of the parties should be withheld from the jury, but that all should be fully submitted for them to give such weight to each, and to draw such conclusion from the whole as they may deem proper, with such aid by the Court with regard to the legal effect of the facts as may be properly given.

Wherefore, the judgment is reversed, and the cause remanded for a new trial in conformity with this opinion.