KNOX, Plaintiff in Error, *vs.* HUNT & LABEAUME, Defendants in Error.

1. The supreme court will not reverse a civil case because illegal evidence has been permitted to go to the jury, if it is afterwards withdrawn from their consideration by instruction.
2. If A. fraudulently transfers property to B., a purchaser from B., even for a valuable consideration, with notice of the fraud between A. and B. will take no title, as against A.'s creditors; but a third party who receives the property from B. in payment of a just debt, without notice of the fraud between A. and B. will hold it against the creditors of A.

*Error to St. Louis Circuit Court.*

This was an action of trespass commenced by Richard F. Knox, in October, 1848, against Hunt & Labeaume, to recover the value of certain property which had been seized and sold by Labeaume, as sheriff, under an execution in favor of Hunt against E. K. Dodge, together with damages for the taking of

Knox *v.* Hunt & Labeaume.

same. The plaintiff claimed the property by purchase from James T. Key. On the trial, evidence was offered tending to prove that James T. Key formed a co-partnership with Parker Dodge, in December, 1847, to carry on the coal business, at the coal banks leased by E. K. Dodge of R. W. Hunt, and that they carried on the business under the name and style of Dodge & Key, until the spring of 1848, when said Key purchased Dodge's interest in the leasehold estate and personal property; that said Key continued to carry on said business until October, 1848, when he was turned out of possession of said leasehold property under a landlord's warrant at the suit of R. W. Hunt; that early in October, 1848, James T. Key sold and delivered to plaintiff the property described in plaintiff's declaration, to pay said plaintiff the amount Key owed him for money advanced; and that, for the balance, amounting to upwards of three hundred dollars, said plaintiff executed his note to Key; that said property was delivered to said plaintiff in the presence of Henry K. Holland, since deceased, and Ranar Knox, who took possession of said property and retained the same as agent for the plaintiff until the 14th day of October, 1848, when the same was levied on under execution in favor of Robert W. Hunt against E. K. Dodge, and subsequently sold. There was evidence offered by the defendants tending to show that E. K. Dodge, to whom the lease was made, was alone interested in the coal business, and that, if Key had any interest, the firm was composed of E. K. Dodge and Key, and not of Parker Dodge & Key. The transfer from Dodge to Key was made by E. K. Dodge, as agent of Parker Dodge, in the spring of 1848, though no bill of sale was executed until the July following. Much conflicting evidence was introduced, bearing upon the question of fraud between Dodge and Key, and upon the ownership of the property at the time of the sale to plaintiff. During the trial, the defendants offered in evidence a transcript of the proceedings in a trial of the right of property before a sheriff's jury. The plaintiff objected, on the

ground that the trial was *ex parte*, without notice, and a trial which the plaintiff notified the sheriff he would not attend. The court admitted the transcript, and the plaintiff excepted. At the close of the case, the court instructed the jury to disregard the proceedings before the sheriff's jury. Many instructions were given and refused. The following, among others, were given at the instance of the plaintiff:

1. If Key was a partner in the firm of Dodge & Key, Key is to be taken, in a suit such as this, as the owner of one half of the partnership property, in the absence of proof that he is the owner of a less share.

6. If the jury shall find that E. K. Dodge and Key were guilty of fraud in their dealings, still, if the property in dispute was, in fact, transferred to Key and afterwards from Key to the plaintiff, to pay a just debt due to the plaintiff, and without notice to the plaintiff, of any fraud between Dodge and Key, then such transfer to the plaintiff would be effectual to pass the property to the plaintiff, as against the creditors of. Dodge.

The following, among others, were given at the instance of the defendants:

2. If the jury find from the evidence, that there never was any *bona fide* sale to Parker Dodge of the property in dispute, and Key was cognizant of that fact, then no transfer by said Parker Dodge to the said Key would vest any title in said Key, as against the creditors of said E. K. Dodge.

3. If the jury find from the evidence, that there was fraud in the alleged transfer or transfers of the property in dispute, first by E. K. Dodge to Parker Dodge, and next by said Parker to said Key, and that the intention on the part of E. K. Dodge and Parker Dodge and said Key, in passing the said property into the hands of Key, was to hinder and delay the defendant, Hunt, in the collection of any debt against said E. K. Dodge, and that said plaintiff was cognizant of such fraudulent intention, no conveyance by said Key to said plaintiff

vested any title in him against the creditors of the said E. K. Dodge.

There was a verdict and judgment for the defendants.

Plaintiff filed his motion for a new trial, one of the reasons assigned for which was, misbehavior on the part of the jury, as set forth in affidavits filed. Counter affidavits were also filed on the part of the defendants. The motion for new trial was overruled, and the case is brought to this court by writ of error.

*Knox & Kellogg*, for plaintiff in error. 1. The testimony of every witness examined in the case proves that James T. Key was a partner in the firm of Dodge & Key, from its formation in 1847, until its dissolution, so that plaintiff's right to *one half* of the property is undoubted. 2. All the legal and competent evidence in the case establishes that Parker Dodge and not E. K. Dodge was the other partner. 3. The court erred in admitting the proceedings before the sheriff, and the subsequent instruction to the jury to disregard them, does not cure the error. *State* v. *Mix*, 15 Mo. Rep. 153. 4. The second instruction given for the defendant does not contain a correct abstract legal principle, and if it did, there was no evidence to sustain it. It is not true, if A. is the owner of property of which he makes a merely nominal and not a *bona fide* transfer to B., that A. and B. cannot, for a valuable and adequate consideration, make a valid sale of said property to C., provided C. knew that the sale from A. to B. was not *bona fide*. To prevent the title vesting in C., under such circumstances, he must have been aiding and assisting A. and B. in their bad faith. If he purchase the property of B. for a valuable and adequate consideration, without any fraudulent intent, he will hold it. 7 B. Monroe, 368. 5. The affidavits filed show misbehavior on the part of the jury.

*Glover & Richardson, E. Bates* and *B. Duke*, for defendants in error.

RYLAND, Judge, delivered the opinion of the court.

From the facts in this case, as stated, it becomes necessary for this court to notice three or four principal matters, as the decision of these will settle the case.

1. First, the matter in relation to the trial of the right of property before the sheriff, and the giving the record of that trial in evidence. The plaintiff objected to this being given as evidence to the jury. The court permitted it to be given, and, by instruction, took the evidence from the jury afterwards. The plaintiff relies on what was said by the court in the case of the *State* v. *Mix*, 15 Mo. Rep. 153. In that case and in the case of the *State* v. *Wolff*, same vol. 172, this court condemned the practice of permitting illegal evidence to go before the jury in criminal cases, and remarked, that instructions might not remove from the minds of the jurors impressions made by such illegal evidence. It was wrong to admit the evidence. These were criminal cases ; the rule has not been carried so far in civil cases. There it will frequently happen, that evidence must be withdrawn from the jury—evidence, seemingly legal at first, but a different state of facts afterwards arising, often requires its rejection or its refusal, if already offered. The courts then direct the jury not to regard such evidence, and withdraw it from their consideration. This will happen ; it has heretofore happened in prudent and careful courts, and it will happen, frequently, in the nature of things. There is no error, then, on this point, and it was not designed to affect civil cases. In the case of *Mix*, this court did not reverse on that ground, but because improper instructions were given. In the case of *Wolff*, we say it was error. However, it was not designed to change the practice in civil actions. It was to keep juries free from prejudicial and improper impressions by illegal evidence going before them at all, in cases of crime. Where a man's life or his liberty was at stake, courts could not be too

careful. In the same case of *Mix*, another important remark was made, which it will not be amiss to repeat here, both for criminal and civil trials. Speaking of instructions, it was said, " A few plain propositions, embracing the law upon the facts of the case, are greatly to be preferred, *in every case*, to a long string of instructions, running into each other and involved in intricacies, requiring as much elucidation as the facts of the case themselves."

Upon the subject of the improper conduct of the jury, and the affidavits in support of the motion for a new trial, on this ground, it will only be necessary to say, that the counter affidavits overthrow this point. These counter affidavits plainly show that there was a misapprehension of the matters in dispute. There was no error, therefore, in overruling the motion for a new trial, in regard to this matter.

2. The only remaining subject requiring the determination of this court, is in regard to the instructions. The plaintiff objects to the instructions given for the defendants, especially the second. This instruction is as follows : " If the jury find from the evidence, that there never was any *bona fide* sale to Parker Dodge of the property in dispute, and Key was cognizant of this fact, then no transfer by said Parker Dodge to said Key would vest any title in said Key, as against the creditors of said Dodge."

If this instruction stood alone in this case, it would make a different appearance and assume a different importance from what it now does. But it is, as an abstract proposition, not objectionable ; it is borne out by authorities. However, in this case, if the proposition was not law, it could not be a reason for reversing this judgment, because the sixth instruction given to the jury by the court, places the law of the case properly before them. It is not inconsistent with this second instruction ; it goes further than that, and embraces the plaintiff in this action ; it puts the whole case before the jury. No matter what was the fraud between Dodge and Key, if the prop-

erty was transferred to Key and afterwards transferred by Key to Knox, the plaintiff, to pay a just debt due to the plaintiff, and without any notice to the plaintiff of any fraud between Dodge and Key, then such transfer to the plaintiff would be effectual to pass the property to the plaintiff, as against the creditors of Dodge. Such is the substance of the sixth instruction, given on plaintiff's own motion. Now, though there be fraud between Dodge and Key, and in consummation of that fraud, the property was turned over to Key, and the court should say that Key was not to hold this property, thus acquired by fraud, as against Dodge's creditors ; yet, having possession of it, and paying a just debt with it, to a man who had no notice of the fraud between Dodge and Key, such payment would enable the person receiving it in payment, to hold effectually against the creditors of Dodge, and would be no more than what is embraced in these two instructions. The second instruction, then, is not inconsistent with the sixth, and both together put the law of the case before the jury.

The third instruction, also given for the defendants, has the same principle in it. It embraces the plaintiff and makes him cognizant of the fraudulent intention of the Dodges and Key. In any point of view, the second instruction, accompanied by the instructions given, could not have misled the jury, if it had been wrong in the abstract. *Noller* v. *Watson*, 6 Humph. 509. In the case of *Edgell* v. *Lowell & Bennett*, 4 Vt. 412, Baylies judge, delivering the opinion of the court said, " It is abundantly insisted upon throughout the charge, (that is, of the lower court) that the vendor and vendee must be actuated by *like* motives to cheat and defraud the creditors of the vendor, or the sale cannot be fraudulent, as it respects the vendee. I cannot approve of this doctrine. It is, however, true that, if the vendee was a *bona fide* purchaser, for a valuable consideration, without notice of any fraud in the vendor, the creditors of the vendor could not avoid the contract as it respects the vendee. But if the vendee, at the time, had *know-*

*ledge* that the vendor sold his farm to defraud his creditors, it would make the conveyance void in his hands, as to such creditors, although he had no wish to defraud them, but purchased because he considered that the farm was *cheap*, and this was the only motive that induced him to purchase. Hence I conclude, that the motives and intents of the vendor and vendee may be different, and the conveyance, as it respects the vendee, will be void."

Lord Mansfield said, in the case of *Worseley et al.* v. *De Mattos & Slader*, 1 Burrow, 474, "If a man, knowing that a creditor has obtained judgment against his debtor, buys the goods of the debtor for a full price, to enable him to defeat the creditor's execution, it is fraudulent. If a man, knowing that an executor is wasting and turning his testator's estate into money, the more easily to run away with it, buys from the executor, with that view, though for a full price, it is fraudulent." In *Kendall* v. *Hughes*, 7 B. Mon. 369, the court of appeals of Kentucky remarked: "It is true, that the purchaser must make the purchase to favor or further the fraudulent intent. But his knowledge of the intent tends to prove, that he did make the purchase to favor or to further it, and is sufficient, unless this inference be repelled by other facts."

Upon the whole, we find no cause for reversing this judgment. It is, therefore, affirmed — Judge Scott concurring; Judge Gamble not sitting.