JOHNSON, Respondent, v. SULLIVAN, Appellant.

1. Communications made by a client to an attorney at law whilst employed in that capacity, are privileged, and are inadmissible in evidence, though, at the time such communications were made, judicial proceedings may not have been commenced or contemplated.

2. The use of the words *bona fide*, in instructions given to a jury, will not vitiate them.

3. A conveyance may be for a valuable consideration, and yet be fraudulent and void as against creditors.

*Appeal from St. Louis Circuit Court.*

This was an action in the nature of an action of ejectment for the possession of a lot of ground in the city of St. Louis. It appeared in evidence that on the 22d of April, 1837, one David Sheppard conveyed the lot in controversy to James H. Johnson and Madison Y. Johnson; that on the 25th of April, 1837, James H. and Madison Y. Johnson conveyed the said lot to their mother Hannah Johnson, the original plaintiff in the present suit, for life, with remainder to their sister Isabella in fee ; that all the title, acquired under the last mentioned deed, had, by various mesne conveyances and descents cast, become vested in the said Hannah Johnson. Defendants claimed title to the premises in controversy under a sale on execution, on the 10th of July, 1838, and a sheriff's deed under a judgment against James H. and M. Y. Johnson. In the suit in which this judgment was obtained, the lot in controversy was attached at the suit of a creditor of the firm of J. H. and M. Y. Johnson, the affidavit charging that the defendants were about fraudulently to dispose of their property and effects. The attachment was levied October 13th, 1837, and there was personal service and judgment by default. Much testimony was introduced by defendants tending to prove that the conveyance above mentioned by J. H. and M. Y. Johnson to their mother Hannah Johnson, was fraudulent as against their creditors ; that soon after the date of that deed, to-wit, in July, 1837, the said J. H. and M. Y. Johnson failed in business and became insolvent. There was also evidence tending to prove that the money paid by J. H. and M. Y. Johnson to Sheppard as the consideration for the conveyance of Sheppard to them of April 22d, 1837, was furnished by their mother, Hannah Johnson, and that they were indebted largely to her at the date of that conveyance.

Trusten Polk, an attorney at law, was introduced as a witness by defendants, and, having stated that he was employed in his professional capacity to draft the deed of April 25th, 1837,

to Hannah Johnson, the plaintiff, was asked to state the communications made to him on that occasion by J. H. Johnson. The court, on the objection of plaintiff, excluded the testimony offered as being privileged communications ; also excluded communications made by the said J. H. Johnson to T. B. Hudson, an attorney at law, on the occasion of his being employed by the said Johnson to prepare his insolvent papers for him.

On plaintiff's motion, the court instructed the jury as follows : " 1. If the jury believe from the evidence that on or about the 4th day of September, 1853, David Sheppard was in possession of the lot in controversy, and made to James H. and Madison Y. Johnson the instrument evidenced by the certified copy thereof read in evidence, dated September 4th, 1835, and thereafter and by virtue thereof he delivered the possession of said lot unto said Johnsons ; that thereafter he made unto said Johnsons a deed of conveyance of said lot, evidenced by the certified copy thereof, read in evidence, dated April 22d, 1837 ; that thereafter the said Johnsons made to Hannah Johnson and Isabella Johnson the deed read in evidence, dated April 25th, 1837, and that said Hannah and Isabella took said deed *bona fide* and for a valuable consideration ; that thereafter Joseph Johnson and Hannah Johnson made to the said Isabella the deed read in evidence, dated April 10th, 1843, and that said Joseph was the husband of the said Hannah ; that thereafter Fletcher Dorey and the said Isabella executed the deed read in evidence, dated December 13th, 1845 ; that thereafter the said Fletcher and Isabella were married, and thereafter the said Joseph and the said Fletcher died, and thereafter the said James H. and Madison Y. Johnson and Isabella L. Dorey made to the said Hannah the deed read in evidence, dated January 5th, 1849, and that the said James H. and Madison Y. Johnson and the said Isabella were the children and the only children of the said Joseph at the time of his death, and that all of said deeds embrace the same property in controversy in this suit, then they should find for the plaintiff. 2. If the jury believe from the evidence that James H. and

Madison Y. Johnson made to Hannah and Isabella Johnson the deed read in evidence, dated April 25th, 1837, for a valuable consideration and *bona fide* on the part of the said Hannah and Isabella Johnson, then they will disregard all the acts and words of said James H. and Madison Y. Johnson, and of each of them, said or done subsequently to the giving of said deed, and prejudicial to their rights thereunder, except such as have been proved to have been said or done with their knowledge and consent; and if they believe from the evidence that the letter of said M. Y. Johnson, read in evidence, was written subsequently to the giving of said deed, and that said deed was taken by said Hannah and Isabella *bona fide* and for a valuable consideration, then said letter can be no evidence to the injury of their rights under said deed.    3. No fraud proved upon James H. and Madison Y. Johnson, or either of them, can affect the plaintiff's claim to the property sued for in this case, if the said Hannah and Isabella took said deed of James H. and Madison Y. Johnson to them, read in evidence, *bona fide*, and for a valuable consideration.    4. If the jury believe from the evidence that at the time when James H. and Madison Y. Johnson made the deed to Hannah Johnson, they owed her the amount of the purchase money paid to Sheppard, or that the money paid to Sheppard was hers, there was no fraud in their making the deed to their mother, even if they knew at the time that they would fail, and that their creditors would, in consequence thereof, lose their debts, or even if they intended otherwise to defraud their creditors.    5. Fraud is not to be presumed; but when charged, it must be proved to a jury before they are authorized to find it, and may be proved from facts and circumstances.    6. A debtor, knowing himself to be insolvent, or about to become insolvent, has a right to prefer one creditor to any and all others, although such preference for the payment of the preferred creditor shall take all the means that he has.  7. If the jury find for the plaintiff, they should allow her for damages the value of the rents and profits of the property sued for since the month of May, 1849, according to evidence, not ex-

ceeding, however, the sum of nine hundred dollars, and should find the monthly value of the rents and profits of the premises sued for."

The court, on the motion of defendant, gave the following instructions : " 8. If, at the time of the execution of the deed from James H. and Madison Y. Johnson to Hannah and Isabella, the said Madison Y. and James H. Johnson were greatly indebted and on the verge of insolvency, and soon after became utterly insolvent, viz., in the summer or fall of the same year, and that the said deed to said Isabella and Hannah was made without any valuable consideration and merely to secure a living to the said Hannah and Isabella, then the title, under the sheriff's deed to Gamble, read in evidence by defendant, is a better title than that under the said deed to Hannah and Isabella Johnson. 9. If testimony of a witness is such, or his conduct shown in evidence is such, as to satisfy the jury that such witness is destitute of moral principle, the jury may disregard his testimony, although he is not impeached by proof from witnesses that he is unworthy of belief on his oath."

The jury found for plaintiff ; defendant appealed.

*H. R. Gamble, T. T. Gantt* and *Glover & Richardson,* for appellant.

I. The testimony of Trusten Polk was improperly excluded by the court. (Aiken v. Kilburn, 27 Maine, 252 ; Foster v. Hall, 12 Pick. 98 ; Hutton v. Robinson, 14 Pick. 421.)

II. The 4th instruction was calculated to mislead, and should not have been given.

III. The use of the words "*bona fide,*" in the instruction given to the jury, is in conflict with the provision of our statute requiring all legal proceedings to be in English, and tended to mislead the jury.

*Todd* and *J. R. Barrett,* for respondent.

I. The communications made to T. Polk and T. B. Hudson were privileged, and consequently were properly excluded. (12 Pick. 89, 93, 94, 95–98 ; 3 Barb. Ch. 395, 596 ; 11 Wheat. 294 ; Wright's (O.) Reps. 136 ; 1 Tyler's (Vt. Reps. 147 ;

7 J. Ch. R. 38, 39 ; 2 Munf. 121, 122 ; 1 Phillip's Ev. 140 ; 2 Starkie's Ev. 229–232 ; 1 Greenleaf's Ev. § 237, 239, 240, 243 ; 8 Watts, 27, 28 ; 1 Porter, 436 ; 4 Munf. 273, 285–6.)

II. The court properly gave the 4th instruction. The question before the jury was, whether Mrs. Johnson furnished a valuable consideration for the deed and took it *bona fide*. The instructions put this question fully and fairly before the jury.

RYLAND, Judge, delivered the opinion of the court.

This case presents two propositions for the adjudication of this court, which we consider the main and principal matters before us. We deem it unnecessary to notice any thing beyond these propositions. The first relates to the action of the court below in regard to the ruling, that the communications made by the Johnsons to Mr. Polk, when they called on him to draw the deed from them to their mother and sister for the lot in controversy as attorney at law, were privileged communications, and as such were not to be detailed or given in evidence ; also the like ruling in regard to communications made to Mr. Hudson, an attorney at law.

The subject of privilege communications has often been before the courts both of England and of the states of our Union, and the decisions have not been uniform. Sometimes the decisions confine the communications to " suits begun or intended, or expected, or apprehended." Other decisions extend the protection to every communication which the client makes to his legal adviser for the purpose of professional advice or aid upon the subject of his liabilities. Now from a careful examination of numerous authorities—decisions of the English and American courts—we think the conclusion may be fairly drawn, that there is no necessity " that any judicial proceedings should have been commenced or contemplated. It is enough if the matter in hand, like every other human transaction, may, by possibility, become the subject of judicial inquiry." (Greenl. Ev. § 240.) " The great object of the rule, (says Greenleaf,

seems plainly to require that the entire professional inter-course between client and attorney, whatever it may have con-sisted in, should be protected by profound secrecy." "It has therefore been held, (says the same author,) that the attorney is not bound to produce title deeds or other documents left with him by his client for professional advice, though he may be ex-amined to the fact of their existence, in order to let in seconda-ry evidence of their contents, which must be from some other source than himself. If he was consulted merely as a convey-ancer to draw deeds of conveyance, the communications made to him in that capacity are within the rule of protection, even though he was employed as the mutual adviser and counsel of both parties." (Greenl. Ev. § 241.) In Cormack v. Heath-cote, (2 Brod. & Bing. 4,) an attorney was called on to draw an assignment of goods; he refused, and the deed was drawn by another. The validity of the deed being questioned after-wards on the ground of fraud, the court of common pleas held that the communication made to the attorney first called on was professional, and that evidence of the fraud through him could not be given. In Parker v. Carter et al., (4 Munf. 286-7,) the Court of Appeals of Virginia said: "This court under-stands it to be settled law that counsel and attorneys ought not to be permitted to give evidence of facts imparted to them by their clients when acting in their professional character; that they are considered as identified with their clients, and, of ne-cessity, entrusted with their secrets, which therefore, without a dangerous breach of confidence, can not be revealed; and this obligation of secrecy continues always, and is the privilege of the client, and not of the attorney. The court is also of opinion that this restriction is not confined to facts dis-closed in relation to suits actually depending at the time, but extends to all cases in which a client applies to his coun-sel or attorney for his aid in the line of his profession. If the principle was confined to causes actually depending at the time, there would be no safety for a person consulting counsel as to the expediency of bringing a suit or of compromising one

which is contemplated to be brought against him." (See also Wilson v. Troop, 7 Johns. Ch. R. 39.) In Foster v. Hall, 12 Pick. 89, Chief Justice Shaw makes an elaborate review of the cases on this subject, and says : " On the whole, we are of opinion, that although this rule of privilege, having a tendency to prevent the full disclosure of the truth, ought to be construed strictly, yet still, whether we consider the principle of public policy upon which the rule is founded, or the weight of authority by which its extent and limits are fixed, the rule is not strictly confined to communications made for the purpose of enabling an attorney to conduct a cause in court, but does extend so as to include communications made by one to his legal adviser whilst engaged and employed in that character, and when the object is to get his legal advice and opinion as to legal rights and obligations, although the purpose be to correct a defect of title by obtaining a release, to avoid litigation by compromise, to ascertain what acts are necessary to constitute a legal compliance with an obligation, and thus avoid a forfeiture or claim for damages, or for other legal and proper purposes not connected with a suit in court." We do not think it necessary to examine and review the cases on this subject. We are satisfied that by the rule most generally received as the law at this day, the communications made in this case to Mr. Polk and to Mr. Hudson are privileged, and these gentlemen, stating that the relation in which they stood to the parties making the communications was a professional one, the court very properly refused to require them to disclose these communications. So the first proposition must be ruled in favor of the judgment below.

The second proposition regards the correctness of the instructions given for plaintiffs in this case. As to the use of the words " *bona fide*," we can not concur in the view taken by the appellant's counsel. We do not regard the use of such words as calculated to obscure the questions before the jury. These words are so often used by our legislators, and by persons frequenting the judicial tribunals of the country, that they may be considered well understood, if not " anglicised."

The 4th instruction given for the plaintiff we consider wrong. It was calculated to mislead the jury. It was a misdirection. It is as follows : " If the jury believe from the evidence that at the time when James H. and Madison Y. Johnson made the deed to Hannah Johnson, they owed her the amount of the pur - chase money paid to Sheppard, or that the money paid to Sheppard was hers, there was no fraud in their making the deed to their mother, even if they knew at the time that they would fail, and that their creditors would, in consequence thereof, lose their debts, or even if they intended otherwise to defraud their creditors." This instruction tells the jury that upon either one of two matters being proved before them, and believed by them, then there is no fraud in making this deed, though the grantors intended to defraud their creditors when they made it. One of those two things is that the sons, the grantors, owed their mother the amount of the money paid to Sheppard at the time they made her the deed ; the other is that the money paid to Sheppard was hers. Now it must strike any one conversant with legal proceedings, that this instruction, no matter what was intended by it, left the jury to ascertain one of these two propositions only ; and no matter which they found to exist, then there was no fraud. They were only to ascertain that the sons owed their mother the amount paid Sheppard. If so, *there was no fraud,* no matter what combination, collusion or bad faith might exist in relation to the transaction on the part of the mother and sons. This is certainly erroneous. The taking and receiving the conveyance by the mother in good faith is left entirely out of their consideration, and they have but to see if the sons owed the mother, or if it was the money of the mother.

There is no principle better settled than that a purchaser for value may still be held a fraudulent purchaser. (1 Burrow, 474 ; 7 B. Monroe, 369 ; 4 Ver. 412 ; 18 Mo. 180, 181.) Now a creditor may combine with his debtors fraudulently to defraud his other creditors. As a purchaser for value may take a conveyance from a fraudulent debtor, which will be void

against his creditors, so may a creditor take in fraud of other creditors a deed or conveyance, which may be declared void. This instruction was therefore wrong. In looking over the whole instructions given by the court, we can not find in any or all put together what may be considered as having the effect to do away with the injury or wrong that might follow to the defendants from this one, pointed, strong and improper instruction. We have purposely omitted discussing the question as to the ownership of the money by the mother, leaving that to be considered when the cause is retried, as to do so would require us to investigate and give our views of the evidence, which might have an effect on the retrial that we desire to avoid. The fourth instruction is wrong, and for giving it the judgment below is reversed, and the cause remanded; Judge Scott concurring.