Weaver v. Hendrick.

WEAVER, Defendant in Error, v. HENDRICK, Plaintiff in Error.

1. In ordinary actions for slander, where the words spoken are actionable in themselves, malice is implied; no express averment is, in such case, necessary to maintain the action.
2. Where, however, the words are spoken in the discharge of some public or private duty, or in the exercise of some right, express malice must be shown.
3. Any circumstances disproving, or tending to disprove, malice are admissible in mitigation of damages.
4. Where illegal testimony is introduced without objection, and the party introducing the same asks an instruction based upon it, the court may properly refuse to grant it.

### Error to Greene Circuit Court.

This was an action to recover damages for slanderous words spoken by the defendant of the plaintiff. The words were charged in the petition to have been spoken falsely and maliciously. The words charged and the evidence adduced in the cause are set forth in the opinion of the court below. Testimony was adduced by defendant to show the general bad character of plaintiff. In the deposition of one Bagley, which was read without objection from the plaintiff, was the following passage : " His (Weaver's) general character is bad. I know it in fact from what he told me. He said there was a man who planted some sweet potatoes, and he, Weaver, grabbled them up and took them home and planted them, and smoothed the hill he took them from. He did this in the night."

The court, at the instance of the plaintiff, gave the following instructions : " 1. If the jury believe from the evidence that defendant Hendrick spoke and published of the plaintiff, Adam Weaver, [that he] stole corn, or that Adam Weaver had stolen his corn, and that the speaking of said words was before the commencement of this suit, they must find for the plaintiff. 2. If the jury believe defendant published and spoke said words of plaintiff, the words being actionable in themselves, the law implies malice, and it is not necessary that the plaintiff should prove express malice. 3. If the jury find for plaintiff, they can give any amount of damages not exceeding five thousand dollars. 4. The speaking the words in the presence of one or more persons is a publication."

The court refused the following instructions asked by defendant : " 1. Unless the jury believe from the evidence that the defendant spoke the words laid in the petition of and concerning plaintiff maliciously, the jury ought to find defendant not guilty. 2. Although it is a general rule that malice is inferred from the speaking of the words, yet if the jury believe, from the evidence of plaintiff's witness, and from

the manner and appearance of the defendant when he spoke the words, that he was not actuated by malicious motives, the jury ought to find the defendant not guilty. 3. If the jury believe from the evidence that defendant spoke the words and that maliciously, they ought to take into consideration his manner of speaking the words in mitigation of damages. 4. If the jury believe from the evidence that defendant had good reason to suspect plaintiff of being a thief from his, plaintiff's, own admission of taking potatoes out of the hills of another man, and carrying them home and planting them, that circumstance may be taken into consideration in mitigation of damages."

*Hendrick*, for plaintiff in error.

I. The question of malice should have been left to the jury. There was a conflict of testimony as to the manner of speaking the words. The instructions given took the question of malice away from the jury. Although malice is to be inferred from the speaking of the words generally, yet it is a fact for the consideration of the jury; and whether in this particular case and under all the circumstances in proof malice existed or not, it was the province of the jury to determine. The instructions assumed that the inference of malice was conclusive from the speaking of the words. The first three instructions asked by defendant involved the question of malice and should have been given. The fourth instruction was improperly refused. Although the testimony of Bagley about the potatoes was objectionable strictly under the pleadings, yet being offered in mitigation and not objected to, it ought not to have been withdrawn from the jury. The refusal of the instruction was in effect the exclusion of the testimony. The plaintiff had precluded himself from raising the objection. (21 Mo. 243.) The damages were excessive.

*Waddell, Edwards & Ewing*, for defendant in error.

I. The instructions given were correct. The words being actionable in themselves, malice was implied in law. There

Weaver v. Hendrick.

was no evidence tending to show a want of malice. (2 Greenl. Ev. § 418; 1 Mo. 140; 2 Saund. Pl. & Ev. 949; 1 Starkie on Sland. 214.) The court did right in refusing the instructions asked by defendant. The law on the subject of malice was fully given to the jury. The fourth instruction was properly refused. Defendant had all the benefit he was entitled to of the bad character of plaintiff he was able to prove. Bagley's testimony was inadmissible. Plaintiff was not precluded from objecting to an instruction based upon such testimony because he permitted it to be read without objection. The refusal of the instruction was not an exclusion of the testimony. The damages were not excessive.

EWING, Judge, delivered the opinion of the court.

·This was an action of slander upon an imputation by the defendant that the plaintiff had committed larceny in stealing defendant's corn. The answer denied the speaking of the words, and, upon a trial, there was a verdict and judgment for three thousand dollars for plaintiff.

The questions presented by the bill of exceptions arise upon the instructions to the jury. On behalf of the plaintiff the jury were charged, in substance, that upon proof of the speaking and publishing of the words set out in the petition before the commencement of the suit, they should find for the plaintiff; and that the words being actionable *per se* the law implies malice, and it is not necessary that express malice should be proved.

The instructions asked by the defendant—which were refused—submitted the question of malice to the jury, and declared that if the words were not spoken maliciously the jury should acquit.

Under the pleadings and evidence in this case we think the law was properly declared in the instructions given by the court, and that there was nothing in the case to warrant the instructions asked by the defendant. The rule seems to be well settled that in ordinary actions for slander, where the

words are actionable in themselves, malice is implied, and no express averment of malice is necessary to maintain the action. Malice is an inference of law from the falsity of the charge, except when the words are spoken in the discharge of some public or private duty, or in the exercise of some right, in which case express malice must be shown. Where the wilful act of publishing defamatory matter derives no excuse or qualification from collateral circumstances, none can arise from a consideration that the author of the mis-' chief was not actuated by any deliberate and mischievous intention to injure beyond that which is necessarily to be inferred from the very act itself. (1 Stark. on Sland. 210.)

The same author remarks: "That such *malice in law* is, in the absence of any legal justification or excuse arising from collateral circumstances, sufficient to support the action for slander, seems now to be settled by the current of authorities." (Id. 212; 1 Greenl. Ev. § 418; 1 Mo. 140.) Where, however, the *occasion* and circumstances of the speaking and publishing are justifiable, a malicious intent is not presumed; and in such case express malice or malice in fact is essential to the right of action, and is obviously a question for the consideration of the jury.

In the case at bar the words imputed a larceny, and the answer denied the speaking. The allegations of the petition were clearly and fully sustained by the evidence; and it is not pretended that the circumstances of the speaking were such as to bring the case within the operation of the rule which requires proof of express malice to maintain the action. The instructions prayed by the defendant on this point were, therefore, properly refused.

The court was also asked to charge the jury that if they believed the defendant spoke the words and that maliciously, they ought to take into consideration his manner of speaking the words in mitigation of damages. Although there is often difficulty in applying the rule allowing evidence in mitigation of damages, and there is much contrariety of opinion as to the extent it should go, it seems to be settled

that any circumstances disproving or tending to disprove malice are admissible. As to what circumstances are admissible in mitigation, our code has made no change, leaving that as at common law. Whether it is necessary, under our code, when the answer denies the speaking of the words, as in this case, to allege also the circumstances relied on in mitigation, as well as when the defendant alleges the truth of the matter charged, need not now be determined, as we conceive there was no evidence on which to base an instruction on this point, except that relating to the general character of the plaintiff; and the instruction applicable to this evidence was certainly as strong as the defendant could have desired, for it assumes the fact of the *bad character* of the plaintiff to have been *proved.*

The only evidence to which the instruction refused could have applied consisted merely of a remark by one of the plaintiff's witnesses on cross-examination. This witness stated on his examination in chief, that he heard defendant say " he would have had corn enough to have done him, if it had not been for old Weaver; he said Weaver had stole his corn; he did not know whether it was 1854 or 1855; it was early in the spring. I think he said Weaver had stole about forty barrels." On cross-examination he said: " The defendant exhibited no vindictive spirit, but laughed when he made the remarks." Three other witnesses testify positively the speaking of the words charged, without any qualification, and the manner or spirit evinced by the defendant. One of them says he heard defendant say twice that Weaver was a rogue and a d—d rogue, and that he had stole his corn. Another says he heard the defendant speak of it a good many times; that he had lost corn a time or two, and he always said Weaver had stole it; that he, Weaver, the d—d old rogue, had stole his corn, and he, defendant, could not spare any more. The other witnesses' testimony is substantially the same. The defendant offered no witnesses except as to the plaintiff's character.

The sense and meaning of the words charged being clear

and unambiguous, and the proof being conclusive as to the speaking, I can not see how the remark of the witness before referred to could have had any tendency to prove the absence of malice. It certainly had no tendency to prove that he believed or had reason to believe the charge to be true when it was made, or to show that he had no intention to impute to the plaintiff the crime of larceny, or the existence of any fact going in mitigation of damages. Under the circumstances of this case, the apparent good *humor* of the defendant, when he uttered the words imputing a crime to the plaintiff of such a character, could not neutralize the words themselves or their effect upon the object of the imputation. It was no antidote to the poison, nor could it arrest or repair the damage which is supposed to be done by such an assault upon character. The instruction was therefore well refused.

The fourth instruction asked by the defendant was erroneous. It is based upon the evidence of a particular act of the plaintiff intended to impeach his character, and relates to a matter having no connection with the subject matter of the alleged slander. The evidence was contained in the deposition of one of defendant's witnesses, and was read without objection at the time, it is true; but the court committed no error in excluding it from the consideration of the jury, or rather in refusing the instruction based upon it. (11 Mo. 237; 18 Mo. 178.) These cases recognize the power of courts to correct errors of this sort in the progress of a cause in civil cases. But the party complaining is he who offered the illegal evidence in the court below, and it is objected that he was deprived of the benefit of it as bearing upon the question of damages. Upon this point the instruction given by the court allowed the defendant the full benefit of all that the facts warranted with respect to plaintiff's character.

In reference to the damages found by the jury, we see no reason for interfering with the verdict. They do not appear to us to be so greatly disproportioned to the injury proved as to call for our interposition. This is a question peculiarly for the jury, who, especially in actions like this, can judge

much more correctly than a court of the great variety of causes and circumstances that enter into an estimate of damages. And it is sufficient to add that the amount of the verdict is not such as to appear to have been the result of improper influences operating upon the minds of the jury. The other judges concurring, the judgment will be affirmed.