SOUTHERN NATIONAL INSURANCE COMPANY *v.* HEGGIE.

4-7130.                                          174 S. W. 2d 931

Opinion delivered October 18, 1943.

*Harry Neelly,* for appellant.

*Yingling & Yingling,* for appellee.

Robins, J.   On April 4, 1940, Letha E. Heggie, wife of appellee, William E. Heggie, signed an application to the appellant, Southern National Insurance Company, for a policy of life insurance, in the sum of $500, naming her husband as beneficiary. A policy, in accordance with this application, was issued by appellant on April 15, 1940, and delivered to the insured by mail on or about that date. Mrs. Heggie died on July 28, 1942. Demand for payment of the amount of the policy having been refused, this suit was instituted in the lower court by appellee against appellant to recover the amount of the policy, together with the statutory penalty and attorney's fee.

Appellant in its answer admitted the issuance of the policy, the payment of premiums thereon, and the death

of the insured, but denied liability on the ground that Mrs. Heggie, in her application for the policy, had stated that she was then in sound health and had had no illness during the previous years, when in truth she was at that time suffering from tuberculosis and had been treated for this disease in the years 1939 and 1940, and that by the terms of the application, which was a part of the policy sued on, it was provided that the policy would be void unless the insured was in good health at the time the policy was delivered, and it was alleged that Mrs. Heggie was not in good health at the time of the delivery of the policy. Appellant, prior to the institution of the suit, had made tender to appellee of the premiums paid on the policy, which tender was renewed in the answer. A trial before a jury resulted in a verdict in favor of appellee, and from the judgment rendered thereon this appeal is prosecuted.

Appellant urges three grounds for reversal: (1). that the lower court should have peremptorily instructed the jury to return a verdict in favor of appellant, because the evidence showed a breach of the warranties contained in the application for the policy of insurance; (2) that error was committed by the lower court in refusing to instruct the jury that they should return a verdict in favor of appellant if the evidence established that the insured was not in good health at the time of the delivery of the policy; and (3) that the lower court erred in denying to counsel for appellant the right to open and close the argument to the jury.

I.

The application for the policy of insurance sued on herein was taken by L. L. Branscum, a soliciting agent for appellant. There were thirty-four questions in all contained in this application. Among other questions and answers appearing therein were: "Present health? Good." "Have you now or have you ever had tuberculosis? No."

It was admitted that Mrs. Heggie had, in the fall of 1939, suffered from tuberculosis, and that she had gone to the State Tuberculosis Sanatorium at Booneville

where, after examination by one of the staff physicians there, she was told that she had pulmonary tuberculosis. She did not remain in the sanatorium for treatment, but returned to her home. Her family physician testified that she improved rapidly from her tubercular condition, and that her death was not caused by that disease, but resulted from peritonitis. Her husband testified that after she returned 'from the sanatorium she "followed directions and improved"; that she had never been bedfast, and that when the application for her insurance was taken she was "in as good health as she ever was," and "she was heavier than she ever was"; that "she did her house work, milked cows, hoed cotton and picked cotton, and that she was sick only about two weeks before her death."

The testimony of witnesses on behalf of appellee, which the jury accepted as true, was to the effect that when the agent took the application for insurance from Mrs. Heggie he wrote down the answers himself and had Mrs. Heggie to sign the application without reading it over, and that, when the question as to whether or not she had ever had tuberculosis was asked, the agent was told that she had been afflicted with this disease and was told that she had gone to the Booneville Sanatorium in 1939, and there had an examination which disclosed the existence of pulmonary tuberculosis.

While the agent testified that he wrote down the answers correctly as given to him, he did not deny that he was told about Mrs. Heggie having had tuberculosis, and, in answer to a question as to whether or not Mr. and Mrs. Heggie both told him about her having had tuberculosis and having gone to Booneville and having had an examination the agent merely answered "I don't recollect that." He further testified that he did not read over the application to Mrs. Heggie after he wrote the answers down. When asked if Mrs. Heggie's daughter did not tell him that her mother had had tuberculosis, and if he had not told this daughter that Mr. and Mrs. Heggie had informed him about her having had tuberculosis, and that he was going to advise the company

about it and leave it up to the company about issuing the policy, he did not deny making that statement, merely saying: "I don't recollect saying that." At the bottom of the application appeared a certificate, signed by the agent, to the effect that he had seen the applicant and had made "local inquiry and investigation" with regard to the applicant, and that he believed her to be in sound health. The application was not attached to the policy, though by the terms of the policy it was made a part thereof. The policy was issued without medical examination of the insured.

Among other instructions the following were given by the lower court: No. 1. "You are instructed that if you find and believe from a preponderance of the evidence in this case that the plaintiff or his wife, Letha E. Heggie, at the time the application for the insurance policy sued on in this action was made, truthfully answered the questions propounded to them, by the agent of the defendant, insurance company, as to the condition of the health of the said Letha E. Heggie, and in answering said questions told him that the said Letha E. Heggie had had tuberculosis prior to that time; and that said agent filled out the application for said insurance and insured signed same without reading it or having it read to them, under the belief that the answers they had given to the questions asked them by said agent had been correctly and truthfully answered in said application, then the defendant, insurance company, is presumed to have had the information given by them to said agent in answer to said questions, when it issued the policy sued on and the plaintiff is entitled to recover in this action notwithstanding the fact that you may further find that the application for said insurance policy did not disclose the true condition of the health of the said Letha E. Heggie at the time prior thereto."

No. 2. "You are instructed that if you find and believe from a preponderance of the evidence in this case that the insured truthfully answered the questions asked her by the agent of the defendant, insurance company, and that said agent wrote the application for the insured,

she had a right to rely upon the agent to correctly write the answers she gave to the questions propounded to her and the defendant, insurance company, is bound by the action of its agent in failing to correctly and truthfully write the answers to said questions unless you further find and believe from the evidence that the insured knew at the time she signed the application that her answers to such questions had not been correctly and truthfully answered therein.''

It has been frequently held by this court that, where an applicant for insurance makes to the agent of the insurer a full disclosure of the facts inquired about in the application, but the agent fails to write down the answers of the applicant correctly, and the applicant is permitted by the agent to sign the application without reading it or hearing it read, the knowledge of the agent as to the physical condition of applicant is imputed to the company and, if a policy is issued on such an application, the company is estopped in an action on said policy to set up the falsity of the answers in the application.

The rule is thus stated in the case of *Union Life Insurance Company* v. *Johnson,* 199 Ark. 241, 133 S. W. 2d 841 (headnote 2): ''Where the facts have been truthfully stated to the soliciting agent, but, by fraud, negligence or mistake, are misstated in the application, the company cannot set up the misstatements in avoidance of its liability, if the agent was acting within his real or apparent authority and there is no fraud or collusion upon the part of the assured.''

In the case of *American National Insurance Co.* v. *Hale,* 172 Ark. 958, 291 S. W. 82, it was said: ''The above doctrine of waiver and estoppel, quoted from the syllabus of the case of *Ins. Co.* v. *King, supre,* (137 Tenn. 685, 195 S. W. 585) has been too firmly imbedded in our law and is too well grounded in reason and justice to be overruled, modified or impaired by announcing any doctrine to the contrary. Since the language quoted from *National Life Ins. Co.* v. *Jackson, supra,* (161 Ark. 597, 256 S. W. 378) can be construed to have that effect on policies like that under consideration, we hereby disap-

prove the same. In the early case of *Ins. Co.* v. *Brodie,* 52 Ark. 11, 11 S. W. 1016, 4 L. R. A. 458, this court, speaking through Mr. Justice BATTLE, said: 'The issue of a policy by an insurance company, with a full knowledge or notice of all the facts affecting its validity, is tantamount to an assertion that the policy is valid at the time of its delivery, and is a waiver of the known ground of invalidity. From such conduct the insured might fairly infer that he is protected.' In *American National Ins. Co.* v. *Otis, supra,* (122 Ark. 219, 183 S. W. 183, L. R. A. 1916E, 875) we said: 'This court has often held that the doctrine of waiver and estoppel applies to insurance contracts, and that these principles will be liberally applied when it is necessary to prevent injustice and fraud being perpetrated by insurance companies upon their policyholders, when the latter have been misled or imposed upon by such companies.' We have held that the general rule above stated of waiver and estoppel applies to knowledge acquired by soliciting agents. In *Blacknall* v. *Mutual Aid Union,* 129 Ark. 450, 196 S. W. 792, we quoted from 14 R. C. L., § 340, p. 1159, as follows: 'It is usually held that, in the absence of policy provisions to the contrary, knowledge affecting the rights of the insured, which comes to an agent of an insurance company while he is performing the duties of his agency in receiving applications for insurance and delivering policies, becomes the knowledge of the company.' See numerous cases cited, and also *Kansas City Life Ins. Co.* v. *Ridout,* 147 Ark. 563, 228 S. W. 55; *Walker* v. *Ill. Bankers' Life Asso.,* 140 Ark. 192, 215 S. W. 598; *Amer. Ins. Co.* v. *Mordic,* 168 Ark. 795, 271 S. W. 460. It follows from the doctrine of these cases that the court did not err in giving the instructions on its own motion and in overruling appellant's prayer for instruction. The issue as to whether or not the insured was in sound health at the date of the application and delivery of the policy was correctly submitted to the jury. The jury was also correctly instructed to the effect that, if they found that the insured was not in sound health at the time of the application and delivery of the policy, and the appellant had knowl-

edge of that fact, the verdict should be in favor of the appellee.''

This court in the case of *The Security Benefit Association* v. *Farmer,* 193 Ark. 370, 99 S. W. 2d 580, said: ''All of the parties live at Manila, Arkansas, a small place, and the agent knew the insured intimately, and had so known her for many years. He knew her approximate age and knew that she had been in the hospital some years ago for an operation and he knew the general condition of her health. Based upon his knowledge, he filled out the application for this insurance himself, answered the questions himself, and if they are incorrectly answered, which is conceded, in some respects, they are the answers of appellant's agent for which appellant is bound. The medical examination appears to have been made by appellant's own medical examiner, but, if not, it was filled out by appellant's agent based upon his own knowledge and information. In 32 C. J., p. 1333, the general rule is stated as follows: 'Where the facts have been truthfully stated to its agent, but by his fraud, negligence, or mistake are misstated in the application, the company cannot, according to the generally accepted rule, after accepting the premium and issuing the policy, set up such misstatements in the application in avoidance of its liability, where the agent is acting within his real or apparent authority, and there is no fraud or collusion upon the part of insured. Among the reasons given for this rule are: That the company assumes to draft the papers so as to meet its own views as to their requirements; that the agent is the agent of the company; that his knowledge will be imputed to the company; that the statements in the application are in fact his statements; that the company is estopped from controverting their truth; and that the evidence does not constitute an attempt to vary a written contract by parol, although there is some authority to the contrary based on the theory that in making the application, the solicitor is acting as agent of the applicant, or that the introduction of evidence to show the fact would violate the rule excluding parol evidence to alter a written contract.' The same

rule is stated in 14 R. C. L., p. 1174, in this language: 'It is the general rule that an insurance agent in making out an application for insurance acts as the agent of the insurer and not of the insured, and if the insured makes proper answers to the questions propounded the insurer cannot take advantage of a false answer inserted by its agent, contrary to the facts as stated by the applicant.' "

By the instructions quoted above the lower court correctly submitted to the jury the question as to whether or not a full and honest disclosure as to Mrs. Heggie's physical condition, and as to her having had tuberculosis, was made to appellant's agent; and the jury found that such disclosure was made. Appellant, therefore, cannot avoid liability herein on the ground that this information was withheld from it.

## II.

The provision in the application for the policy to the effect that the policy should be void if not delivered while the insured was alive and in good health is ordinarily held to be valid and enforcible. The burden, of course, was upon appellant to establish this defense. We are unable to find in the record in this case any substantial, competent testimony upon which the jury could have based a finding that Mrs. Heggie, at that time, was not in good health. While it was shown from the testimony of Mr. Heggie and his daughter that Mrs. Heggie had previously been affected with tuberculosis, it does not appear from their testimony that she was suffering from this disease at the time the application was signed and the policy issued and delivered. Her family physician was not asked to testify as to her condition at that time and gave no testimony relative to it.

While Dr. J. D. Riley, superintendent of the Booneville Sanatorium, testified that in his opinion Mrs. Heggie could not have recovered from the tubercular condition in the period elapsing from the time of her examination in 1939 to the time of the issuance of the policy in 1940, he further testified that he had never seen Mrs. Heggie at all, and his testimony was based entirely on a review of the record of her examination and on a diag-

nosis made by another physician at the sanatorium. This testimony was incompetent. *Roberson* v. *Roberson,* 188 Ark. 1018, 69 S. W. 2d 275; *National Life & Accident Ins. Company* v. *Threlkeld,* 189 Ark. 165, 70 S. W. 2d 851, and *Bankers' Reserve Life Company* v. *Harper,* 188 Ark. 81, 64 S. W. 2d 327. The refusal of a requested instruction based upon incompetent testimony is not error, and this is true even if no objection is made to the testimony at the time it is offered. 64 C. J. 784. In the case of *Weaver* v. *Hendrick,* 30 Mo. 502, it was said: "The evidence was contained in the deposition of one of the defendant's witnesses and was read without objection at the time, it is true; but the court committed no error in excluding it from the consideration of the jury, or rather in refusing the instruction based upon it. (*Sparr* v. *Wellman,* 11 Mo. 237; *Knox* v. *Hunt,* 18 Mo. 174.) These cases recognize the power of courts to correct errors of this sort in the progress of a cause in civil cases."

Furthermore, under the ruling of this court in the case of *National Life & Accident Insurance Company* v. *Shibley,* 192 Ark. 53, 90 S. W. 2d 766, and under the facts as found by the jury in this case, a defense that the insured was not in good health at the time of the delivery of the policy was unavailing. In that case the court held (headnote 2): "That insured was not in sound health when the policy was delivered is no defense where insurer's agent, in the scope of his employment, had knowledge of such fact before delivery of the policy."

### III.

Section 1517 of Pope's Digest of the Laws of Arkansas provides that a party who, under the pleadings, has the burden of proof is entitled to open and close the argument to the jury. Under the pleadings in the case at bar appellant assumed the burden of proof, and, if the right to open and close the argument had been asserted in proper time, it would have been the duty of the lower court to grant appellant's request therefor. It appears from the record that, without any objection by counsel for appellant, appellee proceeded to introduce his testimony first and that appellant did not assert the right to

206

open and close the argument until immediately before the instructions to the jury were given by the court.

In 64 Corpus Juris, p. 83, the rule is thus stated: "The right to open and close must ordinarily be asserted at the opening of the trial, before the other party introduces any evidence. Where at the beginning of a trial one of the parties acquiesces in, or permits without objection, the assumption by the other party of the burden of proof, it is not proper to permit the former to open and conclude the argument to the jury."

While the lower court refused appellant's request to be permitted to open and close the argument, counsel for appellee did not avail himself of the privilege of making the closing argument. Under the circumstances shown by the record in this case, we hold that appellant's assignment of error on this ground should not be sustained.

No error appearing, the judgment of the lower court is affirmed.