DeSoto Life Insurance Company *v.* Johnson.

4-7645                                   187 S. W. 2d 883

Opinion delivered May 21, 1945.

*Arthur L. Adams* and *J. M. Willemin,* for appellant.

*John States,* for appellee.

MILLWEE, J. This appeal is from a judgment in favor of appellee, R. H. Johnson, for $266.67, with interest, penalty and attorney's fee in an action upon a sick and accident insurance policy issued to appellee by appellant, DeSoto Life Insurance Company on July 20, 1943. There is no dispute in the material facts.

In June, 1943, C. T. Rice, an agent of appellant, called at the sheriff's office in Jonesboro, where appellee was employed as a deputy, and inquired for appellee. The agent was informed by Sheriff Leon Brown that appellee had suffered an attack of arthritis and was at Hot Springs taking the baths, but that his son, Lofton Johnson, was there. The agent then talked with Lofton Johnson who informed the agent of appellee's illness and that he would be back in Jonesboro within a few days.

On July 9, 1943, the agent, Mr. Rice, returned to Jonesboro and contacted appellee at the sheriff's office. They talked at length about appellee's illness and the agent was fully informed of the recent attack of arthritis suffered by appellee, as well as previous attacks in the fall of 1942 and in March, 1943. Appellee gave the agent the names of physicians who had treated him on these occasions. The agent then filled out an application for a sick and accident policy. He asked appellee three or

four questions which appellee testified were answered correctly. The agent did not read the application to appellee and appellee did not read it. He merely signed the application at the direction of Mr. Rice and paid $27 for the first premium. Mr. Rice then assured him that, if he got sick with arthritis or anything else, he would be paid $200 per month as provided in the policy.

The application was mailed to appellant company at Little Rock by the agent and the policy issued on July 20, 1943, and was delivered to appellee a few days later. A copy of the application was not attached to the policy.

Appellee suffered an attack of arthritis on November 22, 1943, and was totally disabled until January 1, 1944. He filed his first proof or deposition in support of claim for disability on December 1, 1943, stating that he had been confined to his home because of an attack of arthritis since November 22, 1943. Supporting medical affidavits were filed in January, 1944, which reflected total disability of appellee because of arthritis for a period of 40 days. In the claim filed by appellee he gave the same information as to previous attacks of arthritis that he gave to the agent when his application was taken. Appellant's adjuster called on appellee at the sheriff's office in Jonesboro on or about January 5, 1944, and discussed the claim with him. Appellee informed this agent that he had made full disclosure of his previous attacks of arthritis to the soliciting agent who took the application and wrote the answers therein. This was the first time appellee had seen the application since he signed it and his first knowledge that his answers had been falsely recorded by the soliciting agent. The adjuster testified that he offered to return the premiums paid on the surrender of the policy, while appellee testified that a lump sum offer of settlement was made. The soliciting agent, C. T. Rice, did not testify, but was still employed by appellant at the time of the trial.

Suit was instituted by appellee on March 21, 1944. Another claim was filed for disabling sickness in June, 1944, which is not included in this action. After some delay, appellant accepted the quarterly premiums of $27 made on January 17, 1944, April 15, 1944, and July 17, 1944. The cause proceeded to trial before a jury on September 12, 1944. At the conclusion of the evidence it was conceded by both parties that there was no question of fact to be determined by the jury and both parties requested a directed verdict. The court took the case under advisement. On January 12, 1945, the court heard further evidence on the amount of the attorney's fee to appellee and entered judgment for the amount sued for with 12 per cent penalty and $125 attorney's fee.

In its answer appellant admitted the issuance of the policy, but alleged that appellee expressly stated and warranted in the application that he had never had or been afflicted with bodily infirmity, including arthritis' for which he sought recovery; that the policy was issued in reliance on this statement; that appellant was organized and existed under Act 139 of 1925 (Pope's Digest, § 7837 *et seq.*); that under § 14 of said act (Pope's Digest, § 7850) the statement of appellee is a warranty and was untrue.

Appellant frankly concedes that the majority rule applicable to the undisputed facts in the instant case, aside from any provision of statute, is as stated in 29 Am. Jur. § 846, p. 643, as follows: "Apart from any question of the effect of an attempt by the insurer to limit the authority of its agent by stipulations inserted in the application or policy, or provisions in its by-laws, or by statute, the rule supported by the great weight of authority is that if an application for insurance is drawn by an agent of the insurer, who fills in false answers to the interrogations contained therein which are truthfully answered by the insured, without fraud, collusion, or actual knowledge of the insured, or the existence of circumstances from which constructive knowledge of such falsity might be imputed to him, the insurer cannot rely upon the falsity of such answers in seeking to avoid lia-

bility under the policy issued upon the application. The view generally taken is that the agent in making out the application acts for the insurer, and that the insurer is therefore estopped to assert the mistake or, as has been said in some cases, the mistake is deemed to be waived by the insurer. . .

"The chief reason for the majority rule that an insurer cannot rely upon the falsity of answers inserted in an application for insurance by its own agent in response to questions correctly answered by the insured is the protection of the insured, who has acted in good faith and answered the inquiries correctly; the insurer, to protect itself needs only to select competent and trustworthy agents. . . ." See, also, 32 C. J. 1333-4.

The rule applies, notwithstanding the statements are specifically made warranties. 32 C. J. 1334; 14 Am. Jur. 645; 81 A. L. R. 846; 117 A. L. R. 792; *Brotherhood of R. Trainmen* v. *Long,* 186 Ark. 320, 53 S. W. 2d 433; *New Furniture & Undertaking Co.* v. *Tri-County Burial Club,* 194 Ark. 1045, 109 S. W. 2d 146.

The rule is perhaps more fully stated in Couch, Cyclopedia of Insurance Law, vol. 2, § 524, pp. 1528-31, as follows: "Cases involving the question of the powers or authority of an insurance agent with respect to applications for insurance are very numerous, but, although there is some diversity of opinion, the weight of authority undoubtedly supports the rule, broadly stated, that an insurance agent, in procuring an application for insurance, and in reducing the same to writing, acts as the agent of the insurer; in other words, that when an agent, acting within the scope of his authority, undertakes to fill out, and does fill out, an application for a policy, his acts, representations, and mistakes are those of the company, in consequence of which, if such an agent, by reason of mistake, neglect, omission, fraud, or otherwise, inserts erroneous answers in the application, such representations bind the insurer, but are not binding upon the insured, provided he is justifiably ignorant thereof; that is, unless he has knowledge, actual or implied, thereof, or there has been fraud or fault upon his part, or col-

lusion with the agent; and this, although the agent has transcended his actual authority, or is guilty of fraud, and notwithstanding the adoption of a standard form of policy; all of which, of course, means that, in the absence of fraud, fault, or collusion upon the part of the insured, the insurer's agent has power to bind his principal in matters relating to the making out of the application, and this, even though the insurance contract provides that the statements in the application shall be warranties.''

The majority rule has long been ·followed by this court. It was reiterated in the recent case of *Southern National Insurance Co.* v. *Heggie,* 206 Ark. 196, 174 S. W. 2d 931, where our cases were reviewed and this court said: ''It has been frequently held by this court that, where an applicant for insurance makes to the agent of. the insurer a full disclosure of the facts inquired about in the application, but the agent fails to write down the answers of the applicant correctly, and the applicant is permitted by the agent ·to sign the application without reading it or hearing it read, the knowledge of the agent as to the physical condition of applicant is imputed to the company and, if a policy is issued on such an application, the company is estopped in an action on said policy to set up the falsity of the answers in the application.''

It is the contention of appellant that this well-established principle has been abrogated when sought to be applied ,to policies issued by companies operating under Act No. 139 of 1925; that the effect of said act, and particularly §§ 10 and 14 thereof, is to adopt the so-called minority rule followed by a few decisions from other jurisdictions to the effect that an insurer may rely upon the falsity of answers inserted by an agent in filling out the application after receiving correct answers in such respect from the insured. Courts following this rule regard· the agent in filling out an application as the agent of the applicant and hold the latter responsible for the mistakes, fraud and negligence of the agent in inserting false answers in the application. 14 Am. Jur. p. 644, § 846.

Sections 10 and 14 of said Act 139 of 1925, which appear as § 7846 and § 7850 of Pope's Digest, read as follows: "Section 10. Exclusive Act. Except as herein provided, or as such corporation may be expressly designated in any other law hereinafter enacted, associations organized or admitted to do business in this state under this act shall not be subject to any other law of this state governing insurance companies or construed to apply to associations operating under this act. . .

"Section 14: Statements in Applications Considered Warranties—Unlawful to Conceal or Misrepresent Facts in Proof of Loss. Statements, representations, and answers on the part of applicants for membership as to questions of age, condition of health, and eligibility shall be construed as warranties on the part of the applicant, and such applicant be bound thereby and shall constitute a part consideration for issuance of the policy or certificate of membership on the part of the association.

"It shall be unlawful for the beneficiary, his agent, or representative, under any policy or certificate issued by any association or company coming within this act; or any doctor, undertaker or other attendant, to knowingly conceal, withhold or misrepresent any fact concerning the health, age, cause of death, or other material information as to the deceased member or policyholder because of whose death or accident claim is being made."

Appellant says this new principle and policy of construction is recognized in *Southern Burial Ins. Co.* v. *Baker*, 199 Ark. 468, 134 S. W. 2d 1, and that the facts of that case cannot be distinguished from the facts in the instant case. In that case the beneficiary signed an application for his wife and knowingly made a false statement to the agent who took the application that his wife was in good health. He read part of the application and the agent read the remainder. We think the distinction between that case and the case at bar was recognized by this court in the above case when, after discussing cases in which the majority rule had been applied, it said: "But in practically every case of the class cited the applicant gave answers which were incorrectly written down by

the agent or examining physician. They knew what the facts were, and knowledge constituted a waiver for the reason there was no actual deception. The facts of the situation here under investigation are different. The matters upon which the insurance policy was based, found in the application were stated by the beneficiary himself not as mere matters of his opinion as he insisted upon the trial, but they are in law, warranties. . . ." It was then held that a false answer had been made by the plaintiff in that case, and that under § 14 of Act 139, *supra,* such statement was made a warranty which was not waived by the insurer.

In the case at bar appellee made no false statement as to his previous condition of health. According to the undisputed facts, he made a full, frank and honest disclosure to the agent of appellant as to previous attacks of arthritis and answered all questions correctly. Mr. Rice, the agent of appellant, knowing all the facts as to the physical condition of appellee and his past illness with arthritis made the statements and answers in the application without the knowledge of appellee. The agent was a stranger to appellee and there is no evidence of collusion between them. The false statements were those of the agent and cannot be charged to appellee under the provisions of § 14 of Act 139, *supra.* We, therefore, hold the provisions of this section of the statute inapplicable to appellee under the uncontradicted proof in the case, and that appellant is now estopped to insist upon such false statements in order to avoid liability under the policy. So holding, we find it unnecessary to determine the question of waiver or estoppel of appellant to assert a forfeiture of the contract by continued acceptance of the premiums.

It is also contended by the appellant that § 10 of Act 139 of 1925 expressly prohibits the assessment of penalty and attorney's fee as provided in § 7670 of Pope's Digest. This identical question was decided against the present contention of appellant in the case of *Mutual Benefit Health & Accident Assn. of Omaha* v. *Hunnicutt,* 181 Ark. 892, 28 S. W. 2d 703. There, it was said: "The clear mean-

ing of § 10 of said act is that the general insurance laws relating to the organization and conduct of the insurance business shall not apply to companies operating under said act. Section 6155, C. & M. Digest, is not a law governing the organization and conduct of the business of insurance companies." Section 6155 C. & M. Digest is the same as § 7670 of Pope's Digest which was amended by Act 71 of 1939 to bring marine, casualty, fidelity, surety, cyclone and tornado insurance companies within its terms. It is designed to require prompt settlement of liability in cases where loss occurs and does not purport to govern the organization and conduct of business of insurance companies. *Old American Ins. Co.* v. *Hartsell,* 176 Ark. 666, 4 S. W. 2d 25. We think the construction placed upon § 10 of Act 139 of 1925, in the Hunnicutt case, *supra,* is sound and that it was not the purpose of said section to exclude appellant from liability for penalty and attorney's fee as provided in the statute.

Finding no error, the judgment of the circuit court is affirmed.

GRIFFIN SMITH, C. J., dissents.