H. Ray ROGERS, d/b/a Ray Rogers
Company, Appellee,

v.

ALLIS–CHALMERS CREDIT
CORP., Appellant.

Chiles Tractor and Machinery Co.

No. 81–1309.

United States Court of Appeals,
Eighth Circuit.

Submitted March 10, 1982.

Decided June 1, 1982.

Wm. David Duke, House, Holmes & Jewell, P. A., Little Rock, Ark., Thomas A. Burke, Burke & Eldridge, Fayetteville, Ark., for appellant.

James W. Gallman, Putman, Gallman & Dickson, Fayetteville, Ark., for appellee.

Before HEANEY, BRIGHT and HENLEY, Circuit Judges.

HENLEY, Circuit Judge.

Appellant Allis-Chalmers Credit Corp. (Allis-Chalmers) seeks reversal of a judgment awarding appellee H. Ray Rogers compensatory damages of $35,000.00 in this diversity action for wrongful repossession of a crawler tractor so equipped as to be called a bulldozer. In brief, Allis-Chalmers contends (1) because insufficient evidence exists to support a finding of wrongful repossession, the district court[1] erred in refusing to direct a verdict against Rogers; and (2) insufficient evidence exists to support the award of damages. We affirm the judgment of the district court.

This dispute centers around the repossession of a bulldozer purchased by Rogers under an installment contract. The vehicle was originally delivered by Chiles Tractor and Machinery Co. (Chiles), an Allis-Chalmers dealer, to Thomas B. Lee, pursuant to a six-month lease-purchase agreement. On July 3, 1978, after the lease term had expired, the agreement was converted into an installment contract; this document was signed both by Lee and Rogers as "buyers." Under the terms of the contract, payments were to be made on or before the fifth day of each month, beginning in August, 1978. The installment contract was subsequently assigned by Chiles to Allis-Chalmers. By the end of October, 1978, the contract was two payments in arrears. On October 31, 1978 the bulldozer was repossessed.

Rogers and Allis-Chalmers have advanced conflicting versions of the circumstances leading to the repossession of the bulldozer. Briefly, Rogers asserted the repossession was wrongful because Allis-Chalmers, through the actions and representations of its employee and agent, had waived any default under the contract, and had committed a breach of the peace by entering private property to secure the bulldozer. In contrast, Allis-Chalmers contends that under the terms of the contract its actions in repossessing the vehicle were entirely legal. The company argues that no actions which would constitute a waiver were taken by its employees, and that because Lee was present at the time of and consented to the repossession, no breach of the peace took place. The record contains testimony supporting each party's version of the events leading to the repossession.

At trial, Allis-Chalmers made two motions for directed verdict under Fed.R. Civ.P. 50, both at the close of plaintiff's case and the close of all the evidence. As stated, the district court denied each of these motions, deciding instead that sufficient evidence had been introduced to submit the case to the jury. The court instructed that a finding of wrongful repossession could be predicated upon proof that Rogers was not in default at the time of the repossession; that although a default had

---

1. The Honorable Bruce M. Van Sickle, United States District Judge, District of North Dakota, sitting by designation.

occurred, Allis-Chalmers and Chiles, through the actions of their agents and employees, had waived the right to repossess the vehicle; or, that the manner in which the repossession was accomplished constituted a breach of the peace. Following deliberations, the jury concluded Allis-Chalmers had wrongfully repossessed the bulldozer, and awarded compensatory damages to Rogers. This appeal followed.

*Liability*

■ In passing upon a motion for directed verdict under Fed.R.Civ.P. 50(a), the trial court and this court must (1) consider the evidence in the light most favorable to the plaintiff as the party prevailing with the jury; (2) assume that all conflicts in the evidence were resolved by the jury in the plaintiff's favor; (3) assume as proved all facts the plaintiff's evidence tends to prove; and (4) give to the plaintiff the benefit of all favorable inferences which may reasonably be drawn from the facts proved. *E.g., McGowen v. Challenge-Cook Brothers, Inc.,* 672 F.2d 652 at 655 (8th Cir. 1982); *Polk v. Ford Motor Co.,* 529 F.2d 259, 267 (8th Cir.), *cert. denied,* 426 U.S. 907, 96 S.Ct. 2229, 48 L.Ed.2d 832 (1976). The motion must be denied if, viewing the evidence in this light, reasonable minds might differ as to the conclusions to be drawn. *Id.*

■ Reviewing the record with these principles in mind, we note initially that it is clear a default had technically occurred under the terms of the installment contract. While the term "default" is not defined in either the agreement or the Arkansas Commercial Code, the contract, as indicated, did require that payments be made on the fifth day of each month, beginning in August, 1978. There is no real dispute that the August fifth payment was not made until mid-September, and that at the time of the repossession neither the September nor the October installment had been received. Thus, under the terms of the contract, Rogers' payments were delinquent, and the jury could not properly base its finding of wrongful repossession on the absence of any default. The parties agree, however, that to sustain the verdict in favor of Rog-

ers, substantial evidence need exist with respect to only one of the three bases of liability on which the jury was instructed. We believe sufficient evidence was presented to submit this matter to the jury on the alternative grounds of liability.

Rogers based this wrongful repossession action in part on the contention that Allis-Chalmers waived its right to enforce strictly the time terms of the installment contract. He testified that Rodney Huffaker, the Allis-Chalmers finance representative who dealt with his account, told him in essence that the company would take no action on his account if a payment were mailed by the end of the last week in October. Relying on this alleged representation, Rogers placed an installment in the mail on October 28. This payment was returned by mail; the bulldozer was repossessed on October 31. Rogers asserts Huffaker's statements constitute a waiver by Allis-Chalmers of the contract's default provisions with respect to the September and October installments, and that the company was therefore estopped from repossessing the bulldozer in connection with those delinquent payments. Huffaker's representations were allegedly made during a telephone conversation that took place near the end of October. The testimony of Rogers and Huffaker as to the substance of this call differs sharply. Huffaker testified he told Rogers the company had to receive a payment by October 28, the end of Allis-Chalmers' fiscal month. In contrast, Rogers, as noted, stated Huffaker told him that if a payment were mailed by the end of the last week in October, he would be in "no trouble." We believe this testimony was susceptible of differing interpretations, so as to create a jury question on the issue of waiver, and that the district court correctly denied Allis-Chalmers' motion for directed verdict.

While what has been said is sufficient to dispose of the issue of liability, we also incline toward the view that a jury question was generated with respect to Rogers' claim that the repossession constituted a breach of the peace. The evidence shows that the

repossession was accomplished at the mine site where Rogers was using the bulldozer to recover coal. The real property, owned by a third party, had been leased to Rogers for business purposes. Huffaker, Thomas Lee and a Chiles employee entered the property in the early morning hours of October 31, going through at least one gate to reach the bulldozer. Upon reaching the bulldozer, Lee started the vehicle and drove it onto a trailer, after which it was removed. Some two weeks later Lee brought the bulldozer account into current condition and retook possession of the machine in his own name.

Article 9 of the Uniform Commercial Code, which Arkansas has adopted, provides in pertinent part:

> Unless otherwise agreed, a secured party has on default the right to take possession of the collateral. In taking possession, a secured party may proceed without judicial process if this can be done without breach of the peace . . . .

Ark.Stat.Ann. § 85–9–503 (Supp.1981). The phrase "breach of the peace" is not specifically defined. In this context, however, the Arkansas Supreme Court has noted that "in pre-code cases, we have sustained a finding of conversion only where force, or threats of force, or risk of invoking violence, accompanied the repossession." *Ford Motor Credit Co. v. Herring*, 267 Ark. 201, 589 S.W.2d 584, 586 (1979). *Cf. Williams v. Ford Motor Credit Co.*, 674 F.2d 717 (8th Cir., 1982).

In the instant case, we are not prepared to say that the evidence was insufficient to establish a fact question that the repossession amounted to a breach of the peace. The bulldozer was not openly accessible; rather, the repossession required entry onto private property. *Cf. Ford Motor Credit Co. v. Herring*, 589 S.W.2d at 586 (no fact question generated as to conversion where vehicles repossessed were openly accessible, were removed without entry into or damage to any structure, and without confrontation or contact). There was no evidence the owner of any interest in the realty had given his permission for the entry. More-

over, the repossession took place in the early morning hours. Although the evidence presented a rather close question, we believe the issue whether repossession in these circumstances constituted a breach of the peace was properly submitted to and considered by the jury.

■ Allis-Chalmers argues, however, that Lee's consent to and participation in the removal of the bulldozer precludes as a matter of law any finding that the repossession was wrongful. It is undisputed that Lee was obligated on the installment contract. Generally, if a debtor "voluntarily and contemporaneously consents to a repossession it cannot be a breach of the peace." J. WHITE & R. SUMMERS, HANDBOOK OF THE LAW UNDER THE UNIFORM COMMERCIAL CODE § 26–6, at 1097 (2d ed. 1980). *See Teeter Motor Co. v. First National Bank*, 260 Ark. 764, 543 S.W.2d 938, 941 (1976). Thus, the critical issue here is whether Lee had either actual or apparent authority to consent to the repossession.

As noted, Lee signed the installment contract in addition to Rogers' as co-owner. That Rogers and Lee were transacting business in a partnership at least until about the time the purchase contract was signed is also unquestioned. These circumstances, Allis-Chalmers asserts, demonstrate that Lee was Rogers' partner, and consequently Lee's consent to the repossession was valid and binding. *See generally* Ark.Stat.Ann. § 65–109 (1980).

Rogers' version of the facts contrasts sharply with that of Allis-Chalmers. While admitting that the bulldozer was originally to be purchased on behalf of the partnership between himself and Lee, Rogers claimed that the business arrangement had been dissolved by the time the installment purchase contract was signed. He allegedly protested the fact that Lee's name was also on the contract, but was told by J. D. Meltabarger, a Chiles salesman, that this would be "straightened out." Rogers testified that Meltabarger was notified at this time that the partnership between Lee and himself had been dissolved; Lee testified that Meltabarger was told that Rogers was to

make the payments under the contract. Indeed, the down payment given to Meltabarger that day was made by Rogers. In short, Rogers' position is that the evidence demonstrates the partnership had been terminated at the time the installment contract was executed, and that Lee's consent to the repossession was therefore not binding.

Even assuming this to be correct, Allis-Chalmers argues it had no knowledge of the partnership dissolution, and therefore Lee had "apparent authority" to act for Rogers in consenting to repossession. *See* Ark. Stat.Ann. § 65–135 (1980). Noting that Meltabarger was an employee of Chiles, Allis-Chalmers contends there is no evidence to support a finding that it had knowledge that Lee was not a partner of Rogers at the time of repossession. Rogers, on the other hand, argues there is substantial evidence to support such a conclusion: Huffaker testified he was told by Lee to contact Rogers with respect to payments and that he assumed Rogers was supposed to make the payments; in addition, Allis-Chalmers apparently attempted to collect for the delinquent installments only from Rogers.

■ Viewing the evidence in the light most favorable to Rogers, we hold that the district court properly allowed the jury to consider the issues raised in connection with Lee's authority to consent to the repossession and Allis-Chalmers' knowledge concerning the dissolution of the Rogers-Lee partnership.

*Damages*

Allis-Chalmers also contests the damage award given by the jury. In addition to recovery of his equity in the bulldozer, Rogers sought damages for lost profits in the amount of $9,750.00 and $29,250.00, based upon two contracts he had executed for coal to be recovered at the lease site. Allis-Chalmers contends the damage award of $35,000.00 was in error because the alleged lost profits were not proven with sufficient certainty.

At the outset, we note that no question has been raised concerning the propriety of an award of lost profits under Arkansas law in this case; the parties agree such damages are recoverable here if demonstrated with the requisite specificity. Thus, the sole issue with respect to the damage award is whether Rogers' lost profits were established with sufficient certainty.

■ Proof of lost profits must be sufficient to remove the question of profits from the realm of speculation and conjecture. The evidence must establish the alleged anticipated profits with reasonable certainty, and the jury must be provided a "reasonably complete" set of figures from which to determine the amount of profit lost. *See, e.g., Robertson v. Ceola*, 255 Ark. 703, 501 S.W.2d 764, 766 (1973); *Traylor v. Huntsman*, 253 Ark. 704, 488 S.W.2d 30, 33 (1972).

■ In the case at bar, viewing the testimony in the light most favorable to the verdict, we cannot say the evidence was so insufficient as to render the jury's award speculative. As indicated, the anticipated profits sought by Rogers were based upon two contracts for the recovery of coal from the leased property. Each contract provided for a specific quantity of coal to be recovered by Rogers; the purchasing companies were to pay for the coal at a fixed price per ton and pick it up at the lease site. Testimony revealed that preliminary testing indicated the quality of the coal to be recovered was satisfactory to the purchasers. Rogers provided specific cost estimates with respect to equipment rental, maintenance and repair in connection with each of the contracts. Specific estimates for labor and insurance costs, royalties and severance taxes were also introduced. Most of these expenses were either predetermined or fixed by agreement. An estimate of the time needed to complete the contract was also provided. Although the evidence of lost profit included no estimate of value for time of the plaintiff [2] and was not present-

2. Allis-Chalmers contends the award of lost profits could not be calculated with sufficient

certainty because Rogers failed to assign any

ed in great detail or in impressive form, it was sufficiently specific to enable the jury to make an award with reasonable certainty. Were we the triers of fact, our award might be less than that made by the jury. However, we note that the evidence unquestionably warrants an award of at least a few thousand dollars for loss of the bulldozer itself and that out of a total claim of $52,726.35 damages, the jury awarded $35,000.00. In these circumstances, we are not persuaded that the jury in fact did not make reasonable adjustments and while, as indicated, the award may be liberal, we are unwilling to upset it.

In sum, our review of the record convinces us the district court was correct in submitting this case to the jury, and that sufficient evidence was introduced to allow the calculation of anticipated profits with reasonable certainty. The judgment of the district court is affirmed.

value to his own services in completing the contracts in question. Under Arkansas law, value of a plaintiff's own services is considered a necessary element in calculating cost of performance in breach of contract cases. *Robertson v. Ceola*, 501 S.W.2d at 766. We are not persuaded, however, that the value of Rogers' services would constitute a necessary element for the computation of anticipated profits in the

circumstances of this case, an action grounded in tort, or that the absence of a specific figure rendered the damage award speculative. From figures available, cost of a machine operator could have been approximated.