**Kay B. JACKSON, Appellee,**

v.

**The PRUDENTIAL INSURANCE COMPANY OF AMERICA, Appellant.**

**No. 83–1773.**

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 12, 1983.

Decided May 31, 1984.

Rehearing and Rehearing En Banc Denied July 3, 1984.

John R. Eldridge, III, Burke & Eldridge, Fayetteville, Ark., for appellant.

John R. Elrod, Elrod & Lee, Siloam Springs, Ark., for appellee.

Before McMILLIAN, JOHN R. GIBSON and BOWMAN, Circuit Judges.

BOWMAN, Circuit Judge.

Kay B. Jackson, the widow of Jerry A. Jackson, sued the Prudential Insurance Company of America (Prudential) after Prudential refused to pay death benefits in the amount of $42,000 pursuant to a temporary life insurance agreement. Prudential claimed that Mr. Jackson failed to disclose material information about the state of his health at the time he applied for the insurance. The jury, in response to an interrogatory, found that Mr. Jackson's application contained no misrepresentations, omissions, concealment of facts, or incorrect statements. Prudential appeals from the verdict and judgment in favor of Mrs. Jackson, contending that the District Court should have granted either its motion for a directed verdict or its motion for a judgment notwithstanding the jury's verdict. We reverse the judgment of the District Court, 564 F.Supp. 229.

### Facts

On September 8, 1981, James R. Hartley, a Prudential agent, met with the Jacksons at their request. Mr. Jackson wanted to obtain life insurance because he and his wife recently had incurred a $42,000 indebtedness. Mr. Hartley filled in the answers to questions on the insurance application as Mr. Jackson provided the answers. Depending on Mr. Jackson's answers to certain questions concerning his health, Mr. Hartley was authorized to issue temporary insurance. The temporary insurance agreement provided insurance in the amount applied for, $42,000, until the permanent insurance policy was issued or until sixty days had elapsed if Prudential neither issued nor gave notice of its decision not to issue a permanent policy. After the application was signed by both Mr. Hartley and Mr. Jackson, Mr. Hartley accepted an initial premium payment and completed and signed the temporary insurance agreement.

During the month prior to the meeting with Mr. Hartley, Mr. Jackson had experienced shortness of breath, chest pain, and a tingling sensation and numbness in one arm during his regular evening walks with his wife. His wife testified that he complained of a tingling sensation in his left arm and of a burning sensation in his throat. Concerned, his wife called a fellow church member who had had heart problems and by-pass surgery. This friend recommended that her husband see Dr. Robert Lynch, a Tulsa, Oklahoma cardiologist. Mr. Jackson promptly saw Dr. Lynch on August 31, 1981. According to Dr. Lynch, Mr. Jackson complained of chest pain. Dr. Lynch reviewed Mr. Jackson's medical history and performed a physical examination, including a resting electrocardiogram and a stress electrocardiogram in conjunction with a treadmill tolerance test. Dr. Lynch then advised Mr. Jackson and his wife that Jackson probably had coronary artery disease and recommended that he undergo an arteriogram.

Mr. Jackson was admitted to the hospital on September 10, 1981 for the arteriogram. Following this procedure, Dr. Lynch concluded that Mr. Jackson had severe coronary artery disease and would have to undergo coronary artery by-pass graft surgery. Mr. Jackson had the surgery on September 14, 1981. Although the surgery appeared to go well, he died on September 24, 1981 following post-operative complications. At that time, Prudential had neither rejected his application nor issued a permanent insurance policy.

### Discussion

Appellate review of the grant or denial of motions for directed verdicts and

judgments notwithstanding the verdict is governed by the same standards that govern the trial court in its rulings on these motions. *See, e.g., Kropp v. Ziebarth,* 601 F.2d 1348, 1352 (8th Cir.1979); *Polk v. Ford Motor Co.,* 529 F.2d 259, 267 (8th Cir.) (en banc), *cert. denied,* 426 U.S. 907, 96 S.Ct. 2229, 48 L.Ed.2d 832 (1976); 9 C. Wright & A. Miller, *Federal Practice and Procedure* § 2524 (1971). The evidence must be viewed in the light most favorable to the party opposing the motions—here, Mrs. Jackson—and that party must be given the benefit of all favorable inferences which reasonably may be drawn from the facts proved. *See, e.g., Sanders v. St. Louis County,* 724 F.2d 665 (8th Cir.1983); *Rogers v. Allis-Chalmers Credit Corp.,* 679 F.2d 138, 140 (8th Cir.1982); *Farner v. Paccar, Inc.,* 562 F.2d 518, 522 (8th Cir. 1977). The motions should not be granted if reasonable persons could differ as to the conclusions to be drawn from the evidence. *See, e.g., Rogers, supra; Farner, supra.* Thus, these motions test the sufficiency of the evidence. The trial court has not erred if there is substantial evidence—more than a mere scintilla of evidence—to support a verdict in favor of the party opposing such a motion. *See, e.g., Tackett v. Kidder,* 616 F.2d 1050, 1052–53 (8th Cir.1980).

█ Under Ark.Stat.Ann. § 66–3208, an insurer can establish an affirmative defense to recovery under a policy by showing that there has been a misrepresentation, omission, concealment of facts, or incorrect statement in the insurance application. But the misrepresentation, omission, concealment of facts, or incorrect statement will not prevent recovery under a policy unless it is (a) fraudulent, (b) material to the acceptance of the risk or to the hazard assumed by the insurer, or (c) the insurer in good faith would not have issued the policy at all or would have changed the terms of the policy if the true facts had been made known to it as required by the application. In the instant case, the jury found that there was no misrepresentation, omission, concealment, or incorrect statement made by Mr. Jackson in the application. Our task is to review this finding under the standards set forth *supra.*

The controversy centers on Mr. Jackson's answer to one question on the insurance application concerning his health. That question asked:

19. Has any person named in 1a or 6, Yes No within the last 12 months:
   a. been treated by a doctor for or had a known heart attack, stroke or cancer other than of the skin? . . . . . . . . . . . . . . . . . . . __ __
   b. had an electrocardiogram for chest pain or for any other physical complaint, or taken medication for high blood pressure? . . . . . . . . . . . . . . . __ __

Mr. Hartley testified that Mr. Jackson answered question 19.b. as follows: "As it is written there it would have to be no. I have had an electrocardiogram, but it was in a routine physical." Mr. Hartley then checked question 19.b. "no." It was undisputed that Mr. Jackson answered "no" when asked whether or not he had had an electrocardiogram for chest pain or for any other physical complaint. Both Dr. Lynch and Mrs. Jackson, however, testified that physical discomfort prompted Mr. Jackson's visit to Dr. Lynch on August 31, 1981. Because of Mr. Jackson's complaints of physical discomfort, Dr. Lynch administered both resting and stress electrocardiograms. Mrs. Jackson argues that her husband thought he had an ulcer and therefore was not having an electrocardiogram for chest pain. But even if Mr. Jackson believed that his physical discomfort was due to an ulcer, this belief would not change the fact that he incorrectly answered question 19.b. on the application. *See Findley v. Time Insurance Co.,* 269 Ark. 257, 599 S.W.2d 736 (1980) (even though insured believed she was experiencing menopause, her negative answer to application question concerning health problems was false where she had experienced vaginal bleeding and menstrual irregularity). Mr. Jackson never revealed that physical discomfort prompted his visit to Dr. Lynch and the resultant electrocardiograms. This should have precluded a jury finding that Mr.

Jackson answered question 19.b. correctly. *See, e.g., Marshall v. Prudential Insurance Co. of America,* 253 Ark. 127, 484 S.W.2d 892 (1972) (dispute over whether agent correctly recorded application answers); *Union Life Insurance Co. v. Davis,* 247 Ark. 1054, 449 S.W.2d 192 (1970).

■ In denying Prudential's motions for directed verdict and judgment notwithstanding the verdict, the District Court reasoned that Mr. Hartley's additional knowledge about Mr. Jackson's health provided evidence from which the jury could conclude that the application did not contain a "misrepresentation, omission, concealment or an incorrect statement." Mr. Hartley knew, for example, that one of the Jacksons' friends who had heart problems recommended the cardiologist, Dr. Lynch. Mr. Hartley also was aware of the fact that Mr. Jackson's father and brother had had heart problems. Mr. Jackson told Mr. Hartley that resting and stress electrocardiograms had been run by Dr. Lynch. Mr. Jackson also advised Mr. Hartley that his electrocardiogram results had been abnormal and that he had to return for more tests.

The District Court's opinion seems to suggest that Mr. Hartley's knowledge was relevant to two separate questions—the existence of an incorrect statement and the existence of grounds for estoppel. Mr. Hartley's knowledge, however, would have been relevant to the question of the existence of an incorrect statement only if his accurate recordation of Mr. Jackson's answers had been disputed. No one disputes, however, that Mr. Hartley correctly recorded Mr. Jackson's answers. The remaining inquiry is whether Prudential may be estopped to deny coverage because Mr. Hartley had other information that affected the risk.

The District Court found, and we agree, that Mr. Hartley was a soliciting agent and not a general agent. He had authority only to solicit insurance and, in limited circumstances, to issue temporary insurance coverage. He did not have the authority to accept risks, to agree upon the terms of insurance contracts, to issue and renew policies, or to change and modify the terms of existing contracts. *See Holland v. Interstate Fire Insurance Co.,* 229 Ark. 491, 316 S.W.2d 707 (1958) [hereinafter *Holland*]. Both Mr. Hartley and Mr. Rocco Kesslar, a Prudential underwriter, testified that agents such as Hartley cannot issue temporary insurance if either question 19.a. or 19.b. is answered "yes." The application itself states that such agents cannot accept a premium if either part of the question is answered "yes." If there is a "yes" answer, the soliciting agent would simply forward the application to Prudential's underwriters for an investigation and a decision on whether or not to issue a permanent policy.

■ Arkansas law does not support an estoppel argument in this situation. The general rule is that notice to a soliciting agent is not notice to the insurance company; a soliciting agent has no authority to waive policy requirements and his knowledge cannot be imputed to the insurer. *See, e.g., Ford Life Insurance Co. v. Samples,* 277 Ark. 351, 641 S.W.2d 708, 710 (1982) [hereinafter *Samples*]; *Ford Life Insurance Co. v. Jones,* 262 Ark. 881, 563 S.W.2d 399, 402 (1978) [hereinafter *Jones*]; *Continental Insurance Cos. v. Stanley,* 263 Ark. 638, 569 S.W.2d 653 (1978).

■ Nevertheless, the District Court imputed Mr. Hartley's knowledge to Prudential based upon a series of cases in which the insurance company was bound by notice to the soliciting agent where the agent incorrectly recorded the applicant's answers on the application.[1] *See, e.g., Reli-*

1. The district court and Mrs. Jackson also rely on *Millers Mutual Fire Ins. Co. v. Russell,* 246 Ark. 1295, 443 S.W.2d 536 (1969). *Millers Mutual* involves an insurance agent who admitted that he knew he had a duty to report a change in use of the insured property, that he knew

such a change had occurred, and that if he had sent an endorsed policy with an additional premium, the company would have accepted them. In these circumstances, the Arkansas Supreme Court affirmed a directed verdict against the company and in favor of the insured for the full

*able Insurance Co. v. Elby*, 247 Ark. 514, 446 S.W.2d 215 (1969); *Southern National Insurance Co. v. Heggie*, 206 Ark. 196, 174 S.W.2d 931 (1943). These cases turn on the question of a soliciting agent's duty, pursuant to his relationship with the company, to fill out insurance applications correctly. *See, e.g., DeSoto Life Insurance Co. v. Johnson*, 208 Ark. 795, 187 S.W.2d 883 (1945). But as we earlier noted, no one disputes that Mr. Hartley correctly recorded Mr. Jackson's answer to question 19.b.

Mr. Hartley's knowledge might be significant if his duties included the discretionary authority to evaluate risks before issuing temporary insurance. *See Holland, supra.* Temporary insurance is offered in limited circumstances pending evaluation of the risks by the company's underwriters. Prudential has identified certain situations in which there is a significant degree of risk that the applicant will die while the application is pending and has made a business decision not to allow temporary insurance to be issued in those situations. Unlike the issuing of a permanent policy, Prudential has no opportunity to investigate the insured's health before issuing temporary insurance; it must rely on the insured's truthful responses to application questions. It is undisputed that Mr. Hartley, who was not an underwriter, did not have the discretion to evaluate risks before issuing temporary insurance. His authority was limited to issuing temporary insurance based upon specific answers to specific questions. Therefore, the line of cases which estop the insurer from denying coverage based upon

acts by the agent in the scope of his duties do not apply.

The Arkansas Supreme Court recently restated the general rule that a soliciting agent has no authority to bind the insurance company. *See Jones, supra.* *Jones* involved credit life insurance. The insured signed a form stating that he was in "good health." The insured also told the soliciting agent that he had had a heart attack three years before and was under a doctor's care. Although the Arkansas Supreme Court decided in favor of the insured, it did not rely on the line of cases that estop the insurance company when the soliciting agent has incorrectly written the answers on the application. Instead, the court relied on principles of fairness and wrote narrowly, limiting the decision to the facts of the case.

*Jones* does not support the position of Mrs. Jackson in the present case. First, the Arkansas Supreme Court expressly recognized the general rule that notice to the soliciting agent is not notice to the insurance company. Second, the court limited its decision to the facts in the case. Third, the facts of the case were particularly appealing because of the vagueness inherent in asserting that one is in "good health." An applicant might make such an assertion in good faith, yet have serious health problems. To accord controlling significance to such an assertion, which represents the applicant's opinion of his health, obviously would be unwarranted, and the Arkansas Supreme Court declined to do so.[2]

---

amount of the policy and a jury verdict against the agent and in favor of the company for the amount of the increased premium. Unlike Mr. Hartley in the present case, this agent as well as the insurance company recognized that his duties, based on business practice, included telling the company when he learned of a change in property use. Mr. Hartley's duties, as relevant to the case, were limited to issuing temporary insurance based upon specific application answers provided by Mr. Jackson. The application, which Mr. Jackson signed, clearly stated that a premium could not be accepted if question 19.b. were answered "yes," thus indicating the limits of Mr. Hartley's authority. We do not believe *Millers Mutual* presents a persuasive basis upon which to depart in the present case

from the general rule regarding notice to soliciting agents.

2. In a case very similar to *Jones, Ford Life Ins. Co. v. Samples*, 277 Ark. 351, 641 S.W.2d 708, 709 (1982), the Arkansas Supreme Court again was confronted by the problems inherent in issuing credit life insurance based upon an assertion that the insured is in "good health." The court restated the general rule regarding notice to soliciting agents; its decision in favor of the insured rests primarily on the conclusion that there was not a causal relationship between the misrepresentation or incorrect statement and the eventual loss. The insured was suffering from anxiety reaction and "chronic brain syndrome"; the misrepresentation related to this

Chief Justice Harris of the Arkansas Supreme Court suggested that the problems which arose in *Jones* could have been avoided if the insurer had asked specific questions concerning the applicant's health. *See Jones*, 563 S.W.2d at 402–03 (Harris, J., concurring); *National Old Line Insurance Co. v. People*, 256 Ark. 137, 506 S.W.2d 128, 131–32 (1974) (Harris, J., concurring). In the present case, question 19.-b., incorrectly answered by Mr. Jackson, was very specific and entirely factual. It did not call for the applicant's opinion of his health. In these circumstances, Arkansas law provides no support for an estoppel against the insurer based upon the knowledge of the soliciting agent, when the agent has recorded correctly the applicant's answers to the questions on the application.

■ We agree with the District Court that the answer to question 19.b. was material to the risk. Prudential presented evidence that question 19 was intended to ascertain conditions indicating a high risk of death while the application was pending. As Mr. Hartley testified and the application indicated, Prudential would not have issued the temporary insurance if Mr. Jackson had indicated in his answer to question 19.b. that chest pain or other physical discomfort had prompted him to consult a physician and, as a result, to undergo electrocardiograms.

For the reasons set forth above, we hold that the District Court erred in denying Prudential's motions for directed verdict and judgment notwithstanding the verdict. The judgment of the District Court is reversed.

JOHN R. GIBSON, Circuit Judge, dissenting.

I respectfully dissent.

The jury returned a verdict in favor of Mrs. Jackson and answered "no" to an interrogatory as to whether "there was a misrepresentation, omission, concealment or incorrect statement made by Jerry A. Jackson in the application for insurance."

The district court, in denying the motion for judgment n.o.v., recited the facts as follows:

It is undisputed that Agent Hartley had known Jerry Jackson for a number of years and that he was aware that Jackson's family had a history of heart conditions. There is no question but that, during the course of obtaining the information necessary to complete the application, he was advised of Jackson's visit to a cardiologist in Tulsa, Oklahoma, some 100 miles away from Jackson's home, and that an electrocardiogram and stress test had been given and that the results were abnormal. He was advised that Jackson was to return to Tulsa within two or three days to undergo further tests. The jury certainly had a right to conclude that Hartley, defendant's agent of fourteen years, could not stick his head in the sand and disregard all of that evidence in answering question 19b. The jury could have concluded that Jackson gave him all of the information necessary to put him on notice that his problem was not a routine one and was not the result of a routine physical, but that more serious problems must exist. When the knowledge that Hartley had is coupled with his unequivocal testimony that he did not believe that Jerry Jackson lied to him at the time or that he would lie to anyone, there is, in the Court's view, an abundance of evidence from which the jury could have reached the conclusion that it did.

I believe that Hartley's testimony is important in two respects. First, considering it in the light most favorable to Mrs. Jackson, as we must, and giving it all favorable inferences, *Dulin v. Circle F Industries, Inc.*, 558 F.2d 456, 465 (8th Cir.1977); *Marshall v. Humble Oil & Refining Co.*, 459 F.2d 355, 358–59 (8th Cir.1972), and *Dace v. ACF Industries, Inc.*, 722 F.2d 374, 375

condition. He died of a heart attack. *See National Old Line Ins. Co. v. People*, 256 Ark. 137, 506 S.W.2d 128 (1974) (in order to prove its affirmative defense, insurance company must show causal relationship between the misrepresentation and the eventual loss).

(8th Cir.1983), I believe that it is sufficient to support the jury verdict that there was no misrepresentation, concealment or incorrect statement.

Secondly, I believe that the Arkansas law is substantially less unanimous than the court's opinion today proposes. The district court, in a carefully reasoned opinion, sets forth not only the position expounded by this court in its opinion today, but also refers to a long line of cases which hold that "the knowledge obtained by an insurance agent, even a soliciting agent, in relation to information requested on the application while completing the application is imputed to the insurance company, or that the company is estopped from denying coverage where the agent obtained from the applicant the correct information." The district court cites some fifteen cases in support of this proposition. Our reading of the relatively simple holding in *Reliable Life Ins. Co. v. Elby*, 247 Ark. 514, 446 S.W.2d 215, 217 (1969), and the rather extensive opinion in *Southern National Ins. Co. v. Heggie*, 206 Ark. 196, 174 S.W.2d 931, 934–35 (1943), compels the conclusion that there is substantial authority in Arkansas law to support the holding of the district court. On a question of state law, where there are differing decisions, we should give great weight to the decision of the district court. *Bergstrom v. Sambo's Restaurants, Inc.*, 687 F.2d 1250, 1255 (8th Cir.1982).

I share the district court's observation that it probably would not have decided this case the same way that the jury did. Nevertheless, I think there was sufficient evidence to support the jury's verdict, and I cannot find that the district court erred in its conclusion that the knowledge of the agent should be imputed to the company. I would affirm the judgment of the district court.